Paddock *v.* Palmer et al.

WILLIAM E. PADDOCK *v.* JAMES PALMER, LEBBEUS H. CHASE, FRANCIS B. HALL, BENJAMIN HALL, WILLIAM F. DICKINSON AND THOMAS JAMESON.

[IN CHANCERY.]

Where property, attached upon a wait, is bailed to a receiptor, a judgment, recovered by the creditor against the receiptor, upon the receipt, becomes a mere dead letter upon the payment of the debt to the creditor. Such judgment is merely collateral to the debt, and is for the benefit and security of the sheriff, and ceases to have force when his liability to the debtor and creditor is discharged.

Where creditors, after the debt has been paid to them, seek to enforce a judgment against the receiptor of the property attached in the suit brought for the collection of the debt, a court of equity, to prevent circuity of action, will interfere and enjoin the suit.

The judgment against the receiptor, in such case, being merely collateral to the debt, is in the nature of a penalty; and if payments were made towards the debt, prior to the recovery of the judgment against the receiptor, and not allowed for in making up that judgment, a court of equity will interfere and restrict the creditor to the collection of the actually due.

Where it is obvious, in such case, that the creditors, after having obtained judgment against the receiptor for the full amount of the debt, making no allowance for payments which had been actually made to them previously, received from the receiptor the balance actually due to them upon the debt, and, by words and actions, gave him to understand that they considered the judgment against him paid, with a mere view of keeping him along until his remedy by petition for a new trial should be gone by lapse of time and then pursuing him for the balance appearing due upon the judgment against him, there can be little doubt, that a court of equity may enjoin the judgment upon the *mere ground of fraud.*

· APPEAL from the court of chancery. The orator alleged in his bill, that on the sixteenth day of March, 1836, the defendants James Palmer, Lebbeus H. Chase, Francis B. Hall, Benjamin Hall and William F. Dickinson, doing business under the firm of Palmer, Chase & Co., prayed out a writ of attachment in their favor against one Jonathan Houghton, demanding in damages the sum of six hun-

dred dollars, and delivered the same to the defendant Thomas Jameson, sheriff, for service; that Jameson attached thereon certain property, and took the receipt of the orator and Houghton therefor; that at the April Term, 1837, of Washington county court, Palmer, Chase & Co. recovered judgment in that suit against Houghton for $321,59 damages, and $82,41 costs, and took execution therefor; that the property was demanded of the receiptors, and not delivered, and in 1838 Palmer, Chase & Co. commenced a suit against the orator, in the name of Jameson, upon the receipt; that at the June Term, 1840, of Orleans county court judgment was recovered in that suit against the defendant for $477,00 damages, and 43,13 costs; that the orator, on the 13th day of December, 1837, being satisfied that he should eventually be compelled to pay the debt, and having in his hands some funds belonging to Houghton, paid to Palmer $100,00, for which Palmer gave a receipt in the name of Palmer, Chase & Co., thereby promising to apply the same upon the execution in their favor against Houghton; that on the 12th day of March, 1838, the orator paid to Palmer the farther sum of $100,00, for which Palmer executed a like receipt; that at the time the judgment was recovered against the orator in the suit in the name of Jameson, the orator was assured by Palmer, Chase & Co., that all they sought to recover of him was the amount of their judgment against Houghton, after deducting the payments made as above mentioned, and that those payments were endorsed upon the execution against Houghton, and that an execution should issue against the orator for the balance only; that they in fact prayed out their execution for the full amount of the judgment, and delivered the same to one Locke, a deputy sheriff, to collect; that the orator, believing this was an unintentional mistake, called the attention of Palmer, Chase & Co. to it, and they then declared, and informed Locke, that the whole amount due on said execution was but $304,52, and directed Locke to receive that amount in satisfaction of the execution; that on the fifth day of October, 1840, the orator paid that sum to Locke and Locke paid the same to Palmer, Chase & Co., and they received back the execution and delivered to Locke his receipt therefor; that all this was done by Palmer, Chase & Co. for the purpose of inducing the orator to believe that that execution was fully settled, until the time, within which the orator might ob-

tain redress by motion, or petition for a new trial, had elapsed, and then compel him to pay the balance of the judgment; that Palmer, Chase & Co. afterwards prayed out a writ of *scire facias,* returnable to the June Term, 1844, of Orleans county court, to revive the judgment in the name of Jameson against him; and that that suit was still pending in court. And the orator prayed, that the defendants might be enjoined from prosecuting that suit, and from making any use of the judgment in the name of Jameson against the orator, and for general relief.

The defendant Palmer answered, admitting the facts alleged in the bill as to the suit in favor of Palmer, Chase & Co. against Houghton, and the commencement, at their instance, of the suit in the name of Jameson against the orator upon the receipt; but he denied, that there was any agreement, or assurance, that any allowance should be made, in that suit, for any payments previously made upon the execution against Houghton, and averred that the suit was contested, and that the damages were ascertained and fixed, by the verdict of the jury, at $477,00; and he claimed, that this verdict and the judgment thereon were final and conclusive upon the orator, and all other persons, and declined answering as to any payments made previous to that time. This defendant also denied the allegations in the bill as to the directions to Locke,—but admitted the receipt of the sum of $304,52, claimed to have been paid by the orator to Locke.*

The answer was traversed, and testimony was taken. The orator proved the execution by Palmer, for Palmer, Chase & Co., of the two receipts, for $100,00 each, described in his bill, and also proved that he had paid to Locke, October 5, 1840, the balance due upon the execution against him, after deducting those two payments, and that Locke paid to the attorney of Palmer, Chase & Co. that sum, and at the same time returned to him the execution.

The court of chancery decreed in accordance with the prayer of the bill; and from this decree the defendants appealed.

---

*The papers furnished to the reporter do not show, whether the other defendants answered, or whether the bill was taken as confessed as to them, not the particular terms of the decree made by the court of chancery.

Paddock *v.* Palmer et al.

*T. P. Redfield* and *S. B. Colby* for orator.

The orator insists, that, being a mere receiptor, a collateral guarantor, his liability is at an end, when the judgment against Houghton is paid, or discharged. It would seem clear, that the defendants could not pursue Houghton, for the reason that they have received their pay by $200,00 collected upon the execution against Houghton, and $304,52 collected of the receiptor ; yet the defendants insist upon this absurdity, that, after the principal has paid the debt, they may pursue his *guarantor* for the *same debt.* It is true, that the defendants are permitted to pursue the principal and his collateral security, at the same time, and may have two judgments; but they can have *but one satisfaction. Stillman* v. *Barney,* 4 Vt. 331. *Bank of Rutland* v. *Thrall,* 6 Vt. 237.

But the defendants contend, that, inasmuch as a portion of the debt had been *paid,* and the execution against Houghton reduced *pro tanto,* the receiptor, when sued, should have pleaded this fact. But we think he was not bound to do so. The orator was not party, nor privy, to the suit against Houghton, and was not legally bound to know what payments had been made upon the execution obtained in that suit, and of course could not be required to plead them.

But we insist, that, upon the ground of *fraud,* the court should enjoin this judgment. It was fraudulent, as against the receiptor, to neglect to apply the payments upon the execution against Houghton, as, by their receipts, the defendants had agreed to do. It was fraudulent in them to deduct the amount of the two receipts from the execution and take back the execution, upon receiving the payment of $304,52, giving the orator to understand that the execution was paid, if at that time they intended ever to revive that judgment. They thus induced him to believe, that the execution was cancelled, until all remedy by motion, or petition for new trial, had become barred by the lapse of time. *Livingston* v. *Hubbs,* 2 Johns. Ch. R. 512. *Rigal* v. *Wood et al.,* 1 Ib. 402. *Lansing* v. *Eddy,* 1 Ib. 51. *Lyon* v. *Tallmadge,* 14 Johns. 511.

*C. W. Prentiss* for defendants.

This bill is for a new trial, in chancery, of a suit at law, where the defendant at law, had a perfect defence at law as he alleges, and neglected to avail himself of it. The following authorities, among

others, show that the bill cannot be sustained. 15 Vt. 78. 13 Vt. 477. 18 Johns. 515. 2 Vt. 161. 2 Story's Eq. 174. Hard. 173. 1 Bibb 173. Cooke 36, 175. 3 Dessau. 323. 4 Ib. 422. 1 E. C. L. 534. 2 H & Mumf. 453. 1. Johns. Cas. 436. 6 Ham. 82. 1 Johns. Ch. R. 49, 91, 320. 6 Ib. 87. 4 Johns. 510. 14 Ib. 63. 12 Ib. 183. 8 Vin. 542. *Pettes et al.* v. *Bank of Whitehall,* 17 Vt. 435.

The opinion of the court was delivered by

· REDFIELD, J. This is a case, which is certainly very peculiar in its facts and circumstances, but not, we think, involving any difficulty in its principles. That creditors should seriously insist upon collecting two hundred dollars from the receipt man, in the name of the sheriff, *after the original debt is confessedly paid,* is a case, which it is believed will not often occur. It is one, which needs only to be stated, to have its injustice, severity and cruelty felt by all, whose hearts are not wholly callous to every generous sentiment, and equally indifferent to all the distinctions between right and wrong, except so far as these distinctions are recognized *and enforced* by the municipal law.

But when it is considered, that the judgment against the receipt man was merely *collateral* to the debt, that it was for the benefit and security of the sheriff merely, and that, when his obligation to the creditor was gone, that was gone too, (unless the debtor had claims upon him,—which is not claimed here,) this judgment against this orator becomes a mere dead letter by the payment of the debt *to the creditors.* That is confessedly paid ; and this may be shown in any suit by the creditors, whether against the debtor, or his personal representative, or the sheriff; for none of them are any way affected by this judgment between the sheriff and the receipt man.

1. If the sheriff should collect the money upon this judgment, the creditors could not compel him to pay it to them. For in order to do that, they must show, that some portion of their debt still subsists. Neither could the sheriff justify himself in paying it to the creditors; but he must pay it to Houghton, or his representatives, who are liable to indemnify this plaintiff. Thus the very money, sought to be recovered of this plaintiff upon this judgment, must ultimately go back into his hands again. And to prevent circuity of action, equity will interfere and enjoin the suit.

74

Paddock *v.* Palmer et al.

2. The judgment against the receipt man, being merely collateral, is in the nature of a penalty; and equity will, in all cases of a penalty, interfere to restrict the party to the recovery of a penalty to the sum actually due. This was the only remedy, before the statutes giving courts of law the right to exercise chancery powers in cases of suits upon penal bonds. This was the ground of the great controversy between courts of law and equity, in regard to the independence of their several jurisdictions of each other, so long ago as the time when Sir Thomas More held the office of Lord High Chancellor. Of him it is said, that, when the judges of the common law courts complained of his interfering in the enforcement of their judgments for the penalty of bonds, he suggested, that they should only render judgment for the sum *actually due*, which they declined acceding to; that the chancellor then swore an oath, in the horrid language of the times, by the beard of the Almighty, that *just so long* as the courts of law continued to render such judgments, *he would enjoin them.*

3. When we look at the monstrous injustice of the claim put forth in the defence to this bill, and the ground upon which it is put, *that the court of chancery can give no relief, if they would,* and consider the proof in the case, which tends very conclusively to show, that, *with the creditors,* it has been matter of *deliberate purpose* to *keep the orator along,* with declarations that they considered the debt paid, or intimations from their conduct, which they must have known he would so interpret, until his *remedy by petition for new trial was gone* by lapse of time, and then pursue the judgment against the plaintiff,—in view of these facts there can be little doubt a court of equity *might* enjoin the judgment upon the *mere ground of fraud.* And, if it could be done, one would hardly hesitate reverently to adopt the *sentiment* of Chancellor More, in how much soever milder forms of speech he would choose to express himself. Such outrageous attempts at oppression and injustice cannot fail to produce corresponding sentiments of indignation in all honest hearts. And if the chancellor of this district never makes any less just decrees, than the one in the present case, he will never find my voice, while I hold a seat in this court, in favor of reversing them.

Decree of the chancellor affirmed, with additional costs.