JOSEPH W. STANTON AND ANOTHER *vs.* JAMES H. EMBRY, ADMINISTRATOR.

An injunction against the enforcement by the respondent of a judgment which he has obtained in a court of law, does not involve a denial of the authority of the court that rendered the judgment or of the legality of its action, but is strictly *in personam*, to restrain the respondent from using the judgment unconscientiously.

In all cases where a party has by accident, mistake or fraud, obtained an unfair advantage in a proceeding at law which must necessarily make that court an instrument of injustice, a court of equity will interfere to restrain him from using the advantage thus improperly gained.

And the court will enjoin against the use of such a judgment where rendered by the courts of another state as well as where rendered by our own courts.

The responde t's intestate had prosecuted a claim against the government in behalf of the petitioners under a contract by which he was to receive for his services five per cent. of the amount recovered. Under this contract he had become entitled to $2,296 for his services, but the petitioners claimed that this had been nearly paid by a balance of their money in his hands from a former transaction, this being the sole matter of disagreement. He died soon after, and the respondent, as administrator of his estate, obtained a judgment against the petitioners, in the Supreme Court of the District of Columbia, for $9,185, and brought an action of debt on the judgment in the courts of this state. The petitioners thereupon brought a bill in equity, praying for an injunction against the prosecution of the action and any enforcement of the judgment, offering to pay whatever the court should find to be justly due. The bill alleged that the respondent knew at the time the judgment was taken of the written agreement for compensation by the percentage, and that when the case came on for trial one of the petitioners, who was at Washington, was

sick at his hotel and unable to attend the trial, and that the other, though telegraphed to, was unable to reach Washington in season, that their counsel asked for delay which the court refused to grant, and that the respondent fraudulently took advantage of the circumstances to make a claim upon a quantum meruit instead of under the contract, and recovered the judgment stated. Held, upon a demurrer to the bill, that it presented a proper case for the injunction prayed for.

BILL IN EQUITY for an injunction against further proceedings in an action at law upon a judgment obtained against the petitioners by the respondent as administrator of the estate of one Atkinson; brought to the Superior Court in New London County.

The bill alleged that the petitioners, upon the close of the war of the rebellion, in the year 1865, had a large claim against the United States government for the use of steamers belonging to the petitioners, and that they employed the defendant's intestate, R. J. Atkinson, a counsellor at law, at the city of Washington, to collect the claim of the government upon a commission of five per cent. on the amount collected and paid over; that the said Atkinson prosecuted the claim and obtained an allowance from the government of $45,925.91 on account of it; that the said Atkinson died on the 25th of February, 1871, and the warrant for the money was issued on the 7th of March following, and the money received by the petitioners; that there was due the petitioners from the said Atkinson, from a former transaction, the sum of $1,534.46; that his commission of five per cent. on the $45,925.91 was $2,296.29, leaving a balance due him of only $761.83, and that upon an adjustment of the interest there was due him less than $300; that the respondent Embry was appointed administrator of the estate of said Atkinson and received as such all his account books and papers; that in September, 1871, the respondent sent the claim upon the petitioners to George Pratt, Esq., a counsellor at law residing in Norwich in this state, for collection; that at the request of the petitioners the respondent forwarded to the said Pratt a statement of his claim, which was that the petitioners were indebted to said Atkinson for five per cent. on the amount of $45,925.17, recovered by him for them of the United States

government, for his professional services in collecting the claim, such percentage being $2,296.25; that a suit was commenced by said Pratt against the petitioners on said claim in the Superior Court for the county of New London, they admitting that the commissions charged were correct, but claiming that they were all paid but the above stated balance; that this suit was soon after withdrawn and another brought for the same cause of action before the Supreme Court of the District of Columbia at Washington, claiming $10,000 damages, service being made upon the petitioners there; and that in this suit in March, 1873, a judgment was obtained by the respondent against the petitioners for $9,185.18, and costs of suit. The petition then proceeded substantially as follows:

The petitioners would further represent that one of them, said Palmer, at the time of said trial before the jury, was absent from the District of Columbia, and though telegraphed to, was unable to reach Washington, the place of trial, in time to be present thereat, it having been impossible to tell in advance, with any certainty, what day the case would come on, and the notification by telegraph was too short; and that the other petitioner, said Stanton, was lying sick in bed at the Kirkwood House, in said Washington, and unable to attend said trial. That he endeavored to procure a postponement of said trial, but without success. That since the trial and the disposal of said case the said Stanton has re-examined the masses of papers connected with the business of the petitioners' boats, and which were stored for safe keeping at his domicile in this state, and has found two letters from said Atkinson, one dated February 18th, 1870, and the other dated May 7th, 1870, directed to said Stanton at Stonington, Connecticut, agreeing that his fees in the business should be five per cent. That said Stanton, the managing partner of the old firm of Stanton & Palmer, had long retired from business when said suit was brought; that he was advanced in years; that he had not been in the habit, after leaving off active business, of classifying or indexing his letters; that for several years prior to the commencement of the suit, and after it had been commenced, his mind had been and was greatly

depressed by domestic bereavement caused by the long and painful sickness of his wife, and his mental anxiety and grief at her death wholly unfitted him for business, and seriously impaired his bodily health; that after the commencement of said suit he made search for all letters and papers in his possession relating to the business of said boats, and his correspondence with said Atkinson in relation to the collection of said claims, and all matters relating thereto, and placed all such papers as he could find in the hands of his counsel in said suit, and he then supposed that he had found and placed in the hands of said counsel all of said papers, and that upon the discovery of said letters, he immediately placed the same in the hands of his counsel, but too late for use in the court below, said suit having then been appealed to the Supreme Court of the United States.

And the petitioners would further represent that said suit at law was brought to recover against the petitioners on a *quantum meruit*, and verdict and judgment were rendered thereon for $9,185.18, with interest from March 13th, 1873, when to the knowledge of said Atkinson, whilst living, and, as the petitioners aver, to the knowledge of said Embry as his administrator, the true amount due to said Atkinson for his services, when the amount was received by the petitioners from the United States, was but $2,296.25, on a special contract and agreement for that amount when the money was recovered. And the petitioners aver that said Embry, administrator as aforesaid, in withdrawing his said suit and bill of particulars from this court, and instituting said suit in the Supreme Court of the District of Columbia, with his knowledge of the facts of the case and of the actual fee agreed upon between the petitioners and said Atkinson for his services in relation to said claim, is estopped in equity from claiming and recovering more than that sum from your petitioners, and from taking advantage of the temporary defects in your petitioners' proofs; that his said judgment at law was obtained by the *suggestio falsi* that he was entitled to a *quantum meruit*, and not to a stipulated fee of five per cent. on the amount collected.

And the petitioners would further represent that said Embry, as such administrator, has commenced an action of debt against them on said judgment, to recover the amount thereof, with interest and costs, which suit was returnable to the term of this court, held at New London on the second Tuesday of September, 1877, which was duly served upon the petitioners, and was returned to and entered in the docket of said court; that at said term the said Embry appeared by his attorney, and moved the court for a judgment against the defendants in said action; that the petitioners appeared by their attorneys, who informed the court that they had an equitable defense against the enforcement of said judgment at law, and prayed the court that said cause might be continued to the term thereof to be held at Norwich on the first Tuesday of November next, in order that the petitioners might be enabled to file their petition in said court, praying for equitable relief, and an injunction against the further prosecution of said suit; which motion was allowed by said court, and said cause was ordered to be continued accordingly.

And the petitioners would further represent that they have no adequate remedy at law to protect themselves against this unconscientious judgment, but must be subjected to the payment of the same, and be forever deprived of their just rights in the premises, unless relieved by the equitable powers of this court; that said judgment was obtained by wrong and a hard conscience, awards the administrator four times the amount of his decedent's written contract, and works the petitioners an irreparable injury if enforced; and that said administrator, the plaintiff in said suit, should be perpetually enjoined by this court from prosecuting the same, and from in any manner enforcing said judgment against the petitioners, upon the payment by them of said agreed sum of five per cent. upon the amount collected, viz: $2,296.25, which is more than he is actually entitled to, for the reasons hereinbefore set forth, and which amount the petitioners hereby tender and offer to pay to said Embry, as such administrator, in full for all just indebtedness on their part to the estate of said Atkinson.

The petition then prayed for a disclosure as to the contents of certain books and papers, and for an injunction against the further prosecution of the action on the judgment of the Supreme Court of the District of Columbia, and against the enforcing in any manner of that judgment against the petitioners, upon their paying to the respondent the amount that might be found by the court to be justly due to him.

The respondent demurred to the petition, and the case was reserved upon the demurrer for the advice of this court.

*A. L. Merriman*, of Washington, and *D. Chadwick*, in support of the demurrer.

The petition is based on the following grounds: 1st. That the respondent was guilty of fraud, because he originally presented a bill for $2,296.23, and subsequently brought suit in New London County to recover that amount, which suit was withdrawn, and afterwards a suit for $10,000 was commenced in Washington, when he knew that only $2,296.23 was due. 2d. That one of the petitioners was sick in Washington and unable to go to court, and the other was in Connecticut and did not get the telegram in time to attend the trial. 3d. That there has been newly discovered evidence since the trial. The petition prays for a discovery and an injunction.

1. Whatever fraud there was, if any existed as alleged in the petition, was as well known to the petitioners before the trial at Washington as it is now, and could have been used on that trial. This is a sufficient reason for denying the relief sought. High on Injunctions, §§ 97, 104, 114; *Lester* v. *The State*, 11 Conn., 415; *Waller* v. *Graves*, 20 id., 305, 310; *Parsons* v. *Platt*, 37 id., 563; *Travelers Ins. Co.* v. *Savage*, 43 id., 187; *Emerson* v. *Udall*, 13 Verm., 477; *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 332. They knew, or had the means of knowing, for what they were sued in Washington, and oyer could have been demanded and undoubtedly was demanded on that trial. *Norwich & Worcester R. R. Co.* v. *Cahill*, 18 Conn., 493; *Christmas* v. *Russell*, 5 Wall., 290, 307.

2. The sickness of Stanton, and the fact that Palmer did not attend to the case and did not get the telegram in time to attend court, are no cause for an injunction. That matter was urged before the Washington court, and was passed upon by that court and decided adversely to the petitioners. It was a question which addressed itself solely to the discretion of that court. High on Injunctions, § 100; 1 Story Eq. Jur., § 79; *Chapman* v. *Scott*, 1 Cranch C. C., 302.

3. As to the newly discovered evidence. Due diligence was not used. The petitioners knew of the existence of the letters. They were in Stanton's house among his papers connected with this matter, and after the trial at Washington were at once and easily found by him. If, however, the letters were lost, the petitioners could have called on the respondent for copies at the trial in Washington as well as now. *Travelers Ins. Co.* v. *Savage*, 43 Conn., 187, 193. It must be made to appear, as well as be alleged, that due diligence was used. Id., 191.

4. As to the claim for a discovery. This could have been asked for at the former trial. It is too late to ask for it now. Besides, if the grounds on which relief is asked are not sustained, then the prayer for a discovery will not be. 1 Story Eq. Jur., §§ 71, 72, 73; 2 id., § 895; 2 Swift Dig., 208; *Middletown Bank* v. *Russ*, 3 Conn., 139; *Isham* v. *Gilbert*, id., 166; *Parsons* v. *Platt*, 37 id., 563. The petition does not show what the former testimony was, and whether the new testimony is cumulative or not, or whether it is, in view of the former testimony in the case, material and decisive in character. Nor does it show the letters claimed to exist, so that the court may see whether they bear out the claims of the petitioners, or, in view of the other testimony, whether they would affect the decision of the case. In an ordinary petition for a new trial it is necessary for the petitioner to set out the testimony adduced on the former trial as well as the newly discovered testimony, in order that the court may see whether, taking it altogether, a different decision would probably be made. Much more is it necessary when the petition claims a perpetual injunction against the respondent

without any new trial. *Waller* v. *Graves*, 20 Conn., 310; *Parsons* v. *Platt*, 37 id., 563; *Travelers Ins. Co.* v. *Savage*, 43 id., 187.

5. Eliminate from the case the question of fraud, as a question which as appears could have been disposed of in the Washington court, what is left? Simply a petition for a perpetual injunction against the respondent's enforcing a judgment, legally obtained, on grounds which are solely pertinent in a petition for a new trial. If allowed it takes away from the respondent without fault upon his part his right of trial by jury in the Washington court. There is no authority for such a claim anywhere. High on Injunctions, §§ 96, 98, 100, 101, 102; 2 Story Eq. Jur., §§ 887, 888, 895; 2 Swift Dig., 137; *Carrington* v. *Holabird*, 17 Conn., 537; *Homer* v. *Fish*, 1 Pick., 439; *Hall* v. *Williams*, 6 id., 239; *Hollister* v. *Abbott*, 31 N. Hamp., 442; *Boston & Worcester R. R. Co.* v. *Sparhawk*, 1 Allen, 448; *Roach* v. *Hulings*, 5 Cranch C. C., 637. Fraud is an exception and in some cases may authorize an injunction. High on Injunctions, §§ 109, 110; *Pearce* v. *Olney*, 20 Conn., 544.

6. There is adequate remedy at law by motion for a new trial in Washington. 2 Story Eq. Jur., §§ 880, 895; High on Injunctions, § 101; Hilliard on Injunctions, 203; *Hood* v. *N. York & N. Haven R. R. Co.*, 23 Conn., 609, 623.

7. This court will not interfere by injunction with a judgment obtained in a sister state, except in case of fraud in obtaining it. U. S. Const., art. 4., sec. 1; U. S. Rev. Statutes, sec. 905; *Bank of N. America* v. *Wheeler*, 28 Conn., 433, 439; *Bissell* v. *Briggs*, 9 Mass., 462; *Hall* v. *Williams*, 6 Pick., 239; *Boston & Worcester R. R. Co.* v. *Sparhawk*, 1 Allen, 448; *Meade* v. *Merritt*, 2 Paige, 402; *Bicknell* v. *Field*, 8 id., 440; *Hollister* v. *Abbott*, 31 N. Hamp., 442; *Granger* v. *Clarke*, 22 Maine, 128, 130; *Christmas* v. *Russell*, 5 Wall., 291; *Maxwell* v. *Stewart*, 22 id., 77; 2 Story Eq. Jur., § 900.

8. The Supreme Court of the District of Columbia is a court of the United States, and state courts will not in any case interfere with the established jurisdiction of the United

States courts. In this case the judgment of the Supreme Court of the District has been affirmed by the Supreme Court of the United States. High on Injunctions, § 158; 2 Story Eq. Jur., § 900; *M'Kim* v. *Voorhies*, 7 Cranch, 279; *City Bank* v. *Skelton*, 2 Blatchf. C. C., 14, 26.

9. Whatever rights the petitioners have, they can vindicate them all by motion or petition for a new trial before the court which tried the case, and by doing so take away no rights of trial by jury or other rights of the respondent. Meantime the suit on the judgment in this state can be stayed, on motion, until their petition or motion for a new trial shall be decided there.

*L. F. S. Foster* and *J. Halsey*, contra.

1. A court of equity will interfere to restrain the use of an advantage gained in a court of ordinary jurisdiction, when such advantage has been gained by the fraud, accident, or mistake of the opposite party. *Pearce* v. *Olney*, 20 Conn., 544; *Goodsell* v. *Olmsted*, 42 id., 354; *Crim* v. *Handley*, 94 U. S. Reps., 652; *Marine Ins. Co.* v. *Hodgson*, 7 Cranch., 332, 336; *Gainsborough* v. *Gifford*, 2 P. Wms., 424; 2 Story Eq. Jur., §§ 879, 885, 887, 894.

2. The facts bring the case at bar entirely within the rule. The plaintiff in the original suit, by the *suggestio falsi*, procured a judgment for four times the amount to which he was entitled. If this was not fraud of the grossest character, the word might as well be blotted from the law. "Fraud, in the sense of a court of equity, may be said to include properly all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue or unconscionable advantage is taken of another." Kerr on Injunctions, 32.

3. This was not a case of unliquidated damages. There was a claim for a definite, fixed amount, upon an *express* agreement. Knowingly and designedly setting up an implied agreement, upon a *quantum meruit*, was fraud, which always vitiates a judgment.

4. The petitioners are not precluded of their remedy by laches, or negligence on their part. Where fraud in procuring a judgment exists, as in this case, there must be negligence on the part of the defendants in not protecting themselves against it. The facts alleged in the petition negative any charge of negligence on their part. The active and managing partner, and the one having the correspondence with Atkinson, was confined to his bed by sickness when the case was tried. He endeavored to procure a postponement, but failed to obtain it. The other partner was absent from the city, and was telegraphed to, but too late to reach Washington in time, for the good reason that it could not be known when the case would come on. We are now only concerned with the facts on the record. If any facts can be shown to mitigate or vary the facts alleged, the defendant can avail himself of them by way of answer. The letters from Atkinson to Stanton "stipulating and agreeing that a commission of five per cent. upon this claim was entirely satisfactory," were discovered after the trial. The allegations relieve the defendants from any imputation of negligence in respect to them. It is important to be noted that the defendants endeavored to procure a postponement of the trial. When no such effort is made it is said, in many of the cases, that they must accept the result. But if they used efforts to procure a postponement and failed, they were not in fault in that respect.

5. The Superior Court has jurisdiction of the case, and power to grant relief. A court of equity here does not impugn the judgment of the Supreme Court of the District of Columbia, but considers the equity subsisting between the parties, and acts upon them *personally*, restraining the one from pursuing a judgment so obtained, and protecting the other. It makes no difference whether the judgment is foreign or domestic. See *Pearce* v. *Olney*, 20 Conn., 544, where a court of equity here restrained a suit at law brought here upon a New York judgment. It is a general rule that the courts of the United States will not enjoin against proceedings in the state courts, nor the state courts against pro-

ccedings in the United States Courts, nor in those of another state. 2 Story Eq. Jur., §§ 899, 900; *Diggs* v. *Wolcott*, 4 Cranch, 179; *M'Kim* v. *Voorhes*, 7 id., 279; *City Bank* v. *Skelton*, 2 Blatchf. C. C., 14, 26; *Meade* v. *Merritt*, 2 Paige, 402; *Bicknell* v. *Field*, 8 id., 440; *Kendall* v. *Winsor*, 6 R. Isl., 453; *Williams* v. *Ayrault*, 31 Barb., 364; *Vail* v. *Knapp*, 49 id., 299; *Mariposa Co.* v. *Garrison*, 26 How. Pr. R., 448. But this rule has no application to suits instituted in one state to enforce judgments rendered by the courts of another state, or of the United States. By the constitution and laws of the United States it is provided that judgments of state courts shall have the same faith and credit in other states, as they have in the states where they are rendered. U. S. Const., art. 3, sec. 4; Act of Congress, May 26, 1790. The same rule applies to judgments of the Circuit Court of the United States, when relied upon in a state court. *Niblett* v. *Scott*, 4 Louis. Ann. R., 246; *Barney* v. *Patterson*, 6 Har. & J., 182. They are therefore put upon the same footing as domestic judgments. But this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was rendered, to pronounce the judgment, nor an inquiry into the right of the state to exercise authority over the parties, or the subject matter, *nor an inquiry whether the judgment is founded in and impeachable for a manifest fraud.* *Taylor* v. *Bryden*, 8 Johns., 173. The constitution did not mean to confer any new power upon the states, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of other states domestic judgments to all intents and purposes, but only gave a general validity, faith and credit to them as evidence. No execution can issue upon such judgments without a new suit in tribunals of other states. And they enjoy not the right of priority, or privilege, or lien, which they have in the states where they are pronounced, but that only which the *lex fori* gives them by its own laws in their character of foreign judgments. Story's Conflict of Laws, § 609; *M'Elmoyle* v. *Cohen,* 13 Pet., 312; *Pearce* v. *Olney*, 20 Conn., 544.

PARDEE, J.   In January, 1872, James H. Embry, the respondent, as administrator upon the estate of R. J. Atkinson, late of the District of Columbia, deceased, instituted upon due service of process an action of assumpsit against Stanton & Palmer, the petitioners, in the Supreme Court of that district, and in March, 1873, recovered judgment for $9,185.18 damages, with costs.   Upon this he has brought an action of debt in the Superior Court in New London County. To the same court Stanton & Palmer have brought this petition, in which they aver that the judgment was obtained by fraud, and ask that Embry may be perpetually restrained from enforcing it.   He has filed a general demurrer, and upon this issue is joined.

The judgment was rendered by a court having jurisdiction of person and cause; it stands here upon an equal footing with a judgment rendered in our own court, with this distinction as to manner of enforcement; execution does not go from it against person or property ; a suit must be instituted and a new judgment obtained thereon in our own courts; but, whenever such suit has been instituted, or an execution has been sent out upon a domestic judgment, it is within the province of a court of equity to restrain proceedings in either case alike, if it is certified that it is against equity and good conscience that they should be enforced; and this not in denial of the authority of the court rendering the judgment or of the legality of its action; the injunction is not directed against it, but is strictly *in personam*, to restrain persons from making courts of law instruments of wrong.   Mr. Story says: "Indeed, the occasions on which an injunction may be used to stay proceedings at law are almost infinite in their nature and circumstances.   In general it may be stated that in all cases where, by accident, or mistake, or fraud, or otherwise, a party has an unfair advantage in proceeding in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage which he has thus improperly gained; and it will also generally proceed to

administer all the relief which the particular case requires whether it be by a partial or total restraint of such proceed-ings. If any such unfair advantage has been already obtained by proceedings at law to a judgment, it will, in like manner, control the judgment, and restore the injured party to his original rights." 2 Story's Eq. Juris., § 885. In *Pearce* v. *Olney*, 20 Conn., 544, this court, in restraining a suit upon a judgment recovered in New York, said:—"Indeed, this falls directly within, and is but an illustration of, the general rule, that equity will interfere to restrain the use of an advantage gained in a court of ordinary jurisdiction, which must necessarily make that court an instrument of injustice, in all cases where such advantage has been gained by the fraud, accident or mistake of the opposite party."

In substance the petitioners aver that they had claims upon the government for the use of steamboats in subduing the rebellion; that they contracted with the respondent's intestate to collect these debts for a fixed percentage upon the amount received; that he received and paid over certain sums; that after his death the respondent as administrator upon his estate presented in behalf of the same a written statement of a claim upon them for the sum of $2,296.25, as being the amount then due from them upon the contract basis of five per cent.; that they admitted the legality of the claim so far forth as the amounts collected and the rate per cent. of com-pensation were concerned, but insisted that they had paid about $1,500 thereon and were indebted for no more than the balance; that in November, 1871, the respondent commenced a suit against them in this state for the full amount of the claim as stated by himself; that he withdrew the same in March, 1872, having commenced another in January, 1872, in the Supreme Court of the District of Columbia; that upon the day when this suit came to trial Stanton was unable, by reason of sickness, to leave his room in Washington; that Palmer, by reason of not having sufficient notice of the day, without fault or neglect on his part, failed to be present at court; that delay was asked for and denied; that, in the absence of both at the trial, the respondent fraudulently

claimed to recover against them upon a *quantum meruit*, withholding from the court evidence as to the contract for compensation by a fixed percentage, which he knew, by letters of his intestate in his possession, to be the true basis for the judgment; and that by fraud he succeeded in obtaining a judgment for $9,185.18, which he is now seeking to enforce in this state. This averment of fraud the respondent, by his omission to deny it, has left the court to assume to be true for the purpose of testing its legal sufficiency. Upon the supposition that it is true the case comes within the rule above stated, and presents an occasion for the interference of a court of equity to prevent the court of law from being made an instrument of injustice.

Neither in the presence of the petitioners at, nor in their absence from the court for any cause, at the day of trial, could the respondent fraudulently obtain a judgment which he could thereafter enforce against them, if they should seek the protection of a court of equity against it.

The demurrer is overruled; the respondent must answer over.

In this opinion the other judges concurred.