(77 South. 393)

SIMS et al. v. RIGGINS et al. (7 Div. 777.)

(Supreme Court of Alabama. Dec. 20, 1917.)

INJUNCTION ☞26(7)—AGAINST EJECTMENT—MISTAKE IN PARTITION SALE.

Ejectment by the purchaser at sale for partition for lands included by mistake in the proceedings, neither he nor the parties knowing they were included, he taking possession only of the lands intended to be included, and two years afterwards leasing the lands included by mistake, from the party to whom they had individually belonged, will be enjoined.

Anderson, C. J., and McClellan and Somerville, JJ., dissenting.

Appeal from City Court of Talladega; Marion H. Sims, Judge.

Suit by Anna Riggins and others against A. L. Sims and others for injunction. Decree for plaintiffs, and defendants appeal. Affirmed.

W. B. Castleberry and W. B. Harrison, both of Talladega, for appellants. Riddle & Burt, of Talladega, for appellees.

THOMAS, J. The bill is primarily for an injunction against appellant Sims, to restrain him from prosecuting his suit in ejectment for the lands in question, and incidentally seeks the correction of certain proceedings had in the city court of Talladega, of date March 12, 1910, wherein certain lands were sold for division among joint owners; the sale having been confirmed by decree of date April 15, 1910, and the commissioner's deed to the purchaser, A. L. Sims, having been executed of date October 19, 1910. The bill in the instant case avers that a bill was filed in the city court of Talladega by D. S. Riggins, against W. S. Riggins and these respondents, and others, praying a sale for division of the lands held by them as joint

owners, specifically describing the same, and setting up that there was a misdescription, in that, with the 80 acres held by the parties to the suit as joint owners, and sought to be sold, there was included the northeast quarter of the southeast quarter of section 12, township 22, range 2, which did not belong to the said joint owners, but was the property of Mrs. Anna Riggins and her children, heirs at law of P. S. Riggins, deceased. At said sale A. L. Sims became the purchaser. It is averred that the parties to said proceeding to sell did not intend to sell the said 40-acre tract, and that the said Sims did not know that the same had been sold to and purchased by him, nor intend to purchase the same. It is further averred that after the sale of said lands in 1910, the appellant Sims went into the possession of the lands so purchased, that had been jointly held by the parties to the bill, and did not go into possession of any portion of the land now in question, that appellees cultivated and rented the same for the years 1911 and 1912, and that for the years 1913 and 1914, appellant rented the same from appellees and gained the possession thereof as such tenant, and paid the rent for said years. It is further averred that he made no claim of ownership to any portion of said questioned land until late in the fall of 1914, but that he thereafter, on January 14, 1915, brought his suit of ejectment for the recovery of the same from the appellees. It is further averred that the lands intended to be sold for division comprised only 80 acres, and that Sims bid therefor $550, and that the lands so purchased were easily worth the amount of his bid, and that, in fact, he paid nothing for the 40 acres of land in question; the same being worth more than the amount of appellant's bid at said sale. After the granting of the temporary injunction on February 2, 1915, the defendant submitted on his demurrers challenging the correctness of the bill, on grounds, among others: (1) That the respondents were estopped from impeaching the decree of the city court of Talladega; (2) that they were guilty of negligence and laches in not filing their bill within 3 years from the rendition of said decree; and (3) that the facts stated in the bill do not show that the complainants, or any of them, were entitled to the relief prayed, or to any other relief in a court of equity. The demurrers were overruled, and from this ruling of the chancellor the appeal is taken.

The bill in this cause is not for review. Its effect is to pray an injunction, under the facts alleged, to restrain the appellant from prosecuting his ejectment suit for the quarter section of land in question, under his title obtained by mutual mistake committed in said partition sale by all the parties thereto, in which said sale Sims, as purchaser, participated; that is to say, to restrain the said

Sims from taking advantage of such mistake of fact, and to compel him to desist in his proceeding at law thereunder.  McGraw v. Little, 198 Ala. 553, 73 South. 915.

No motion to dissolve the injunction was made on the ground that the bill was not properly verified.  The question cannot be raised for the first time on appeal, though the verification is not sufficient.  Rule 15, Chancery Practice, p. 1532, Code; Woodward v. State, 173 Ala. 7, 55 South. 506; Guyton et al. v. Terrell, 132 Ala. 66, 31 South. 83.  If the defect in the affidavit had been pointed out on the trial, unless cured, the injunction would have been discharged.  Woodward v. State, supra; Forney v. Calhoun County, 84 Ala. 215, 4 South. 153; Jacoby v. Goetter, Weil & Co., 74 Ala. 427; Calhoun v. Cozens et al., 3 Ala. 498.

In Black on Judgments (volume 1, § 366), it is stated that the leading case in America upon the subject of equitable relief against judgments at law is that of Marine Insurance Co. v. Hodgson, 7 Cranch, 332, 3 L. Ed. 362.  In that case Chief Justice Marshall specified the grounds for the interference of equity in the following terms:

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

The appellant may say that the appellees have asked the aid of this court to relieve them from a judgment, on account of a defense which they were not prevented by any act of the appellant, or by any pure and unmixed accident, from making in the other court.  Chief Justice Marshall answers such a case as follows:

"It will not be said that a court of chancery cannot interpose in any such case.  Being capable of imposing its own terms on the party to whom it grants relief, there may be cases in which its relief ought to be extended to a person who might have defended, but has omitted to defend himself at law.  Such cases, however, do not frequently occur.  The equity of the applicant must be free from doubt.  The judgment must be one of which it would be against conscience for the person who has obtained it to avail himself."  Marine Ins. Co. v. Hodgson, 7 Cranch, 332, 3 L. Ed. 362.

The citations on this case are a striking tribute to the great Chief Justice.

In Freeman on Judgments, vol. 1 (4th Ed.) § 284a, there is cited one case (Jones v. Coffey, 97 N. C. 347, 2 S. E. 165) in support of the statement that parties to a judgment under which land was directed to be sold may not show in a collateral action that it belonged to them and was ordered sold by mistake.  In section 304 the author says:

"There are authorities indicating that a judgment in partition was but a segregation into separate parcels of the titles which the parties before held, and that it had no force as an estoppel.  Doubtless there may have been, and may yet be, cases in which a particular claim of title is the only one which is put in issue, and in which the final judgment may affect nothing but such title.  But at the present time there can be no doubt that a judgment in a proceeding for the partition of lands is as conclusive upon the matter put in issue and tried as a judgment in any other proceeding, and may be set up as a bar to a writ of entry involving the same questions of title."

Discussing the general power of a court of equity to correct errors in judgments and decrees, Mr. Pomeroy admits that a court of equity may, under special circumstances, exercise its jurisdiction by correcting mistakes in judgments and decrees and other records, where the error is clerical or ministerial, and not judicial, and there is no other means of obtaining the relief.  2 Pom. Eq. Jur. (3d Ed.) § 871; Barnesly v. Powel, 1 Ves. Sr. 119, 289; Colwell v. Warner, 36 Conn. 224; Greeley v. De Cottes, 24 Fla. 475, 5 South. 239; Smith v. Butler, 11 Or. 46, 4 Pac. 517; Loss v. Obry, 22 N. J. Eq. 52; Wheeler v. Kirtland, 23 N. J. Eq. 13; Gump's Appeal, 65 Pa. 476; Byrne v. Edmonds, 23 Grat. (Va.) 200; Kearney v. Sascer, 37 Md. 264; Barthell v. Roderick, 34 Iowa, 517; Palmer v. Bethard, 66 Ill. 529; Millspaugh v. McBride, 7 Paige's Ch. (N. Y.) 509, 34 Am. Dec. 360; Chapman v. Hurd, 67 Ill. 234; Stites v. Wiedner, 35 Ohio St. 555; Pool v. Docker, 92 Ill. 501; Young v. Morgan, 9 Neb. 169, 2 N. W. 237; Willard's Eq. Jur. pp. 78, 79; Partridge v. Harrow, 27 Iowa, 96, 99 Am. Dec. 643; Smith v. Pearce, 6 Baxt. (Tenn.) 72; Beveridge v. Hewitt, 8 Ill. App. 467; Markham v. Angier, 57 Ga. 43.

In Stanton v. Embry, 46 Conn. 65, 76, the court said:

"It is within the province of a court of equity to restrain proceedings in either case alike, if it is certified that it is against equity and good conscience that they should be enforced; and this [is] not in denial of the authority of the court rendering the judgment or of the legality of its action; the injunction is not directed against it, but is strictly in personam, to restrain persons from making courts of law instruments of wrong.  Mr. Story says: 'Indeed, the occasions on which an injunction may be used to stay proceedings at law are almost infinite in their nature and circumstances.  In general it may be stated that in all cases where, by accident, or mistake, or fraud, or otherwise, a party had an unfair advantage in proceeding in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage which he has thus improperly gained.'"  1 Story's Jur. § 885.

In Loss v. Obry, supra, the chancellor declared that:

"Mistakes are corrected even where they occur in the records or proceedings of courts, and exist in the records themselves.  This will be done, not by reviewing the judgments or proceedings of these courts, but by restraining the parties who may take advantage of such mistakes from

doing so, or by compelling them to execute proper papers for the purpose of such correction." 1 Story, Eq. Jur. 166; Jeremy's Eq. Jur. 492; De Riemer v. Cantillon, 4 J. R. C. 85; Waldron v. Letson, 15 N. J. Eq. 126; Roach v. Duckworth, 61 How. Prac. (N. Y.) 128; Stanton v. Embry, supra.

In Waldron v. Letson, 15 N. J. Eq. 126, the facts were that, under an erroneous description, the entire premises intended to be included were not included; the mortgage was foreclosed and the property sold, and the misdescription carried into the foreclosure proceedings and the deed to the purchaser. The purchaser took possession of the whole tract, including that not embraced in the mortgage. The mortgagor having died, his son brought a suit in ejectment to recover possession of the land not so embraced in the mortgage, and was enjoined from setting up a title to the land.

The case of Smith v. Butler, supra, was a suit to correct a mistake in a decree of partition, which had originated in the description of the division lines in the report of the referees, and which, not being noticed at the time, had been confirmed by the court without objection, and incorporated in its decree. It was declared that:

"Equity will grant relief of mistakes in judgments, decrees, and other matters of record, when the mistake is not judicial and there are no other means of obtaining relief."

To the same effect was the holding in Colwell v. Warner, supra, where the facts were that the parties to a foreclosure suit had agreed upon a time for a redemption, to be limited by a decree, but by mistake the time was not inserted in the decree, and the mortgagee, supposing his title to be absolute, had taken possession and continued therein for 3 years, making extensive improvements, the mortgagor during that time keeping a portion of the premises as a tenant; that the premises were worth at the time of the decree but little more than the incumbrance, but that during the three years they had doubled in value, without reference to the improvements made thereon by the mortgagee; that at the end of the 3 years, the mortgagor, discovering the mistake in the decree, brought a petition to redeem, to which the mortgagee filed a cross-bill, praying the court to amend the decree in accordance with the original agreement. The court agreed that the amendment be made, and dismissed the petition. The court said:

"Both parties were ignorant of the mistake until long afterwards, and treated the decree as complete and valid. The correction of this mistake will place the parties where they supposed they were, and carry out their intention, doing no harm or injustice to any one; while, on the other hand, the refusal to amend the decree, especially if the mortgagor is permitted to redeem upon the terms proposed in his bill, will subject the mortgagee to loss and serious inconvenience, and a corresponding advantage inures to the mortgagor."

In Barthell v. Roderick, 34 Iowa, 517, where a judgment on a promissory note had been rendered for a small amount, which was erroneous by reason of a mistake of plaintiff's attorneys in calculating the amount, it was held that a court of equity may correct such a mistake in the judgment. So in Young v. Morgan, supra, an action on a forged note, resulting in a judgment against Y. who supposes the action to be on the genuine note and makes no defense, it was held that Y. was entitled in equity to relief against the execution of such judgment.

In Stites v. Wiedner, supra, the court said that, as a general rule, the title of a purchaser at a judicial sale cannot be impeached in equity for errors and irregularities in the proceedings, but that where a tract of land, not in fact sold, and for which no consideration was paid or intended to be paid, is, by mistake, included in the report of the sales, such mistake may be corrected, in equity, as against the purchaser or his heirs, even after confirmation and deed in pursuance thereof. Parol evidence may be permitted to prove such mistake. So in Peck v. Osteen, 37 Fla. 427, 20 South. 549, where land not belonging to the mortgagor was included in the foreclosure of the mortgage.

It must be borne in mind that there is a clear distinction between the mere correction of a mistake and the setting aside of a judgment. Where it appears that a distinct question has been presented to a court, and a ruling has been made thereon, and that ruling passed into a judgment, it is one thing for a party to apply thereafter to have that judgment set aside and a different ruling made by the court upon that question; but an entirely different thing, when a party avers that, by some mistake, the judgment which was entered does not in fact express the intention of the court in respect to its adjudication of the rights of the parties, or that by a mistake a matter has been by the language of the decree apparently adjudicated by the court, to which the court's attention was not called, and upon which it did not intend to make any ruling. First Nat. Bank v. Wentworth, 28 Kan. 183, 187, 188; Fisher v. Villamil, 62 Fla. 472, 56 South. 559, 39 L. R. A. (N. S.) 92, Ann. Cas. 1913D, 1003; Quivey v. Baker, 37 Cal. 465; Blodgett v. Hobart, 18 Vt. 414; Busey v. Moraga, 130 Cal. 586, 62 Pac. 1081; Parker v. Starr, 21 Neb. 680, 33 N. W. 424; Davenport v. Sovil's Widow, 6 Ohio St. 459; Cummings v. Freer, 26 Mich. 128; Donald v. Beals, 57 Cal. 399, 405.

The case of Henderson v. Hosfeldt, 124 Ala. 391, 27 South. 415, is not in conflict with the view expressed in the foregoing authorities. In the Henderson Case, the land was sold under execution, and a deed by such purchaser to his vendee was thereafter made; the lands actually sold and bought were specifically described in the levy and subsequent conveyances; the last purchaser brought his bill in equity to substitute the debtor's lands

in lieu of those actually sold and bought; and the bill was properly held to be without equity. It was not the case of a reformation of the description in a deed, of land which was actually sold and bought, but a case of the substitution of other lands not sold at all. To the like effect was the holding in Reddick et al. v. Long, 124 Ala. 260, 27 South. 402; Stephenson v. Harris, 131 Ala. 470, 31 South. 445; Stephenson v. Harris, 153 Ala. 462, 45 South. 196; Stewart v. Wilson, 141 Ala. 405, 37 South. 550, 109 Am. St. Rep. 33; Dial v. Gambrel, 126 Ala. 151, 28 South. 1.

In Stephenson v. Harris, 153 Ala. 462, 45 South. 196, Mr. Justice Denson said:

"It may be that 'a mistake in the proceedings, such, for instance, as a misdescription in the bill of the land mortgaged, when first discovered after the decree and sale, is ground for setting aside the decree and sale, either wholly or as to the land * * * described, and for maintaining a bill to correct the error.' Jones on Mortgages (4th Ed.) § 1675. See, however, Stephenson v. Harris, 131 Ala. 470, 31 South. 445. But this is not a bill for review, nor does it contain any averment that the complainant was not aware of the mistake in the description of the lands, as written in the mortgage, while the foreclosure proceedings were going on, and before the decree of foreclosure and order of sale were enrolled."

The reason upon which these cases are rested is that, while a mistake in the description in a mortgage may be corrected before foreclosure, nevertheless, after the mistake has been carried through the foreclosure proceedings, and after the term, it cannot be corrected in the mortgage, in the decree, in the sale and the deed made by the register, nor in the register's report of the sale, because to do so would result in giving to complainant by decree a title to land that was not described in the bill to foreclose, that was not decreed to be sold, that was not advertised and sold, and that was not by the register conveyed to the purchaser under the foreclosure decree.

It will be observed that in the mortgage cases above cited, the purchaser sought correction of the decree and of the terms of the sale, where the decree was fully executed; that is to say, the aid of a court of equity was invoked to impose on the parties another and different decree from that rendered, on full pleading and proof. This relief was properly denied. In the instant case the bill is not filed by the purchaser, but is filed by one of the parties to the original suit; and it alleges the mutual mistake of all of the parties to said suit, as well as of the purchaser at said sale. It alleges the execution of said decree, to the extent of the delivery to the purchaser of all the lands intended to be sold and purchased at said sale, but avers that said decree was never executed as to any portion of the northeast quarter of the southeast quarter of section 12, township 22, range 2—the land so erroneously sold—and that at all times the posses-

sion of this 40 has been retained by the complainants in this bill.

If the effect of the sale in the city court of Talladega was to divest complainants of the legal title to the said 40-acre tract, their retention of the peaceable possession thereof, as averred in the bill, asserted and retained their equitable title thereto. This claim of title was notice of their equity, and they were not chargeable with laches until the mistake now averred was discovered, or should have been discovered. W. R. & D. Co. v. Hawkins, 186 Ala. 234, 65 South. 183; Fowler v. Ala. I. & S. Co., 164 Ala. 414, 51 South. 393; Ogletree v. Rainer, 152 Ala. 467, 44 South. 565; Harold v. Weaver, 72 Ala. 373.

We have seen that the bill is specific, in averment of the mutuality of the mistake between all the parties, of the retention of the possession of the land by complainants, and of Sims' acquiescence therein for about 4 years, and that when at last he sought to enforce a claim of legal title thereto, the bill was filed. Thus there is shown a reasonably sufficient explanation of complainants' delay.

The English and the American courts have held with great unanimity that after one has obtained knowledge of the fraud, or has been informed of facts and circumstances from which such knowledge would be imputed to him, a delay in instituting judicial proceedings for relief, although for a less period than that prescribed by the statute of limitations, may be, and generally will be, regarded as an acquiescence, and that this may be, and generally will be, a bar to any equitable remedy. To this rule there is one limitation: It applies only when the fraud is known or ought to have been known. No lapse of time, no delay in bringing suit, however long, will defeat the remedy, provided the injured party was, during all this interval, ignorant of the fraud. The duty to commence proceedings can arise only upon his discovery of the fraud, and the possible effect of his laches will begin to operate only from that time. Boothe v. Lord Warrington, 4 Brown's Par. Cases, 163; So. Sea Co. v. Wymondsell, 3 P. Wms. 143; Bailey v. Glover, 21 Wall. 342, 22 L. Ed. 636; Kirby v. Lake Shore R. Co., 120 U. S. 130, 7 Sup. Ct. 430, 30 L. Ed. 569; Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005; Pom. Eq. Jur. (2d Ed.) §§ 917–965.

In Mullen v. Walton, 142 Ala. 166, 172, 39 South. 97, 99, this court declared:

"The laches which will deprive a party of claiming equitable relief is the 'intentional failure to resist the assertion of an adverse right.' * * * consequently there cannot be acquiescence, 'without knowledge on the part of the person of the infringement therein of his legal rights.' " 18 Am. & Eng. Ency. Law (2d Ed.) pp. 99, 113, and notes; Pom. Eq. Jur. § 817.

In Hauser v. Foley & Co., 190 Ala. 437, 67 South. 252, Mr. Justice Somerville quotes with approval the following:

"So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates an estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but, when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief." Chase v. Chase, 20 R. I. 202, 37 Atl. 804; 5 Pom. Eq. Jur. § 21.

"Laches," as has been well said, "does not, like limitations, grow out of the mere passage of time, but it is founded upon the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the * * * parties." Galliher v. Caldwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738; First National Bank v. Nelson, 106 Ala. 535, 18 South. 154; Rives v. Morris, 108 Ala. 527, 18 South. 743.

In Haney v. Legg, 129 Ala. 619, 30 South. 34, 87 Am. St. Rep. 81, it was held that if complainant's right be recognized, the statute begins to run from the time when the holder of the legal title asserts his adverse right against the equitable owner. And Chief Justice Brickell has said (James v. James, 55 Ala. 533) that:

"If the complainants were ignorant of the facts, on which their right to relief is founded, until a few months before filing the bill, * * * acquiescence and unreasonable delay would not be imputable. Knowledge of the facts which entitle to relief, and a want of diligence in acting upon it, must coexist, to authorize the presumption of a waiver of the right." 1 Lead. Eq. Cas. 236; Ponder v. Cheeves, 90 Ala. 117, 120, 7 South. 512.

Of necessity the facts of each case must determine whether parties are guilty of an "acquiescence" that amounts to laches. A mistake of fact that would be unconscionable to enforce must be governed by the above analogous rule.

The statute had completed a bar to a bill for review, when the present bill was filed. Code, § 3178. Looking for an analogous statute, we find that in actions seeking relief on the ground of fraud, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the facts constituting the fraud, after which he must have one year within which to prosecute his suit. Code, § 4852; Heflin v. Ashford, 85 Ala. 125, 3 South. 760; Porter v. Smith, 65 Ala. 169; Holt v. Wilson, 75 Ala. 58; Gordon v. Ross, 63 Ala. 363; Willis v. Rice, 157 Ala. 258, 48 South. 397, 131 Am. St. Rep. 55; Manegold v. Beavan, 189 Ala. 248, 66 South. 448.

In the instant case, complainants were interested in the said partition proceeding in the city court of Talladega, to an inconsiderable degree, an undivided one-eightieth interest in 80 acres of land sought to be sold, and this interest was subject to a dower. When the land was sold, their respective interests in the proceeds were as follows: That of Mrs. Anna Riggins was $6.03 $4/7$, and that of each of the other complainants was $4.52½. For 20 years (since December 24, 1890, the date of the record of their father's deed), the complainants had been in the uninterrupted possession of the lands so included by mistake in the proceedings to partition their grandfather's land. After this sale, and the purchaser, Sims, had taken possession of the lands intended to be sold and purchased, and their possession was undisturbed for more than 2 years. Then appellant became their tenant, and as such remained until after the expiration of the 3-year period from the date of the sale. If when he acquired possession of the land from appellees, under his rent contract for 1913 and 1914, he knew he was the holder of the legal title, and that the equitable title was in his landlords, and delayed to assert his right until after the bar of the statute for review of the decree and confirmation of the sale, this acquiescence in appellees' equitable title, and the concealment of his legal title as such purchaser, will estop him from now asserting his legal title.

It is to be noted that the partition suit was concluded on October 19, 1910, and that appellant repudiated his tenancy in the fall of 1914, and sued in ejectment on January 14, 1915. That he obtained and had the possession of the land as tenant before, and during, the third year after the sale, and only repudiated that tenancy after the expiration of the time in which the statutory bill for review might be filed, is persuasive of one or the other of two conditions of fact: (1) That appellant did not intend to purchase, or know that he had purchased, the land in question, and appellees did not intend to disturb their individual land holdings, or know that they were disturbed, by this sale; or (2) if appellant knew that at said sale he had become the purchaser of the land now in question, then he purposely delayed, beyond the expiration of 3 years from the date of sale, to assert his right as purchaser of the legal title. If, therefore, the averments of the bill are true, such averred acquiescence in, and unequivocal recognition of appellees' equitable title will, in equity and good conscience, preclude the appellant from now asserting his right, to appellees' detriment. It would be a strange perversion of a wise principle of law to allow a misleading party to profit by conduct inconsistent with any rights of his own as purchaser and owner of the legal title, and consistent with the rights of his adversary in the quiet, peaceable, and uninterrupted possession as the owner and holder of the equitable title.

Aside from this reason, it would be unconscionable to permit appellant, under the circumstances averred in the bill, as by a voluntary suppression of the truth, to assert his legal title against the equitable title of appellees. Paddock v. Palmer, 19 Vt. 581.

To hold that he may do so would, in the language of Judge Story—

"allow an act originating in innocence to operate ultimately as a fraud, by enabling the party who receives the benefit of the mistake to resist the claims of justice under shelter of a rule framed to promote it." 1 Story's Eq. Jur. (12th Ed.) § 155.

And as Chancellor Kent said (Gillespie v. Moon, 2 Johns. Ch. [N. Y.] 596, 7 Am. Dec. 559):

"It would be a great defect in what Lord Eldon termed the 'moral jurisdiction' of the court, if there was no relief for such a case." Townshend v. Stangroom, 6 Ves. 326–328.

See, also, Haney v. Legg, supra; Armour v. Lose, 33 Ala. 317; Gillen v. Powe, 219 Fed. 553, 135 C. C. A. 322; Arnold v. Fowler, 44 Ala. 167.

The question here is different from that in Lee v. Thompson, 99 Ala. 95, 11 South. 672, where the respective rights of a donor and donee were questioned in a court of law. Nor have we a desire to depart from the rules declared in Rittenberry v. Wharton, 176 Ala. 390, 58 South. 293, and De Soto C. M. & D. Co. v. Hill, 194 Ala. 537, 69 South. 948, and in Norwood v. L. & N. R. R. Co., 149 Ala. 151, 42 South. 683.

It will not be required—as prayed in the bill—to correct the decree of the city court of Talladega, in which the mistake of fact originated. It will be sufficient—if its execution would be unconscionable—to enjoin appellant from asserting any right or interest thereby acquired, and to reinvest appellees with the legal title to the land in question.

The majority of the court, to wit, ANDERSON, C. J., and McCLELLAN, SOMERVILLE, and GARDNER, JJ., are of the opinion that the cause should be reversed on the authority of Norwood v. L. & N. R. R. Co., supra, and De Soto C. M. & D. Co. v. Hill, supra.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN, SOMERVILLE, and GARDNER, JJ., concur. MAYFIELD and THOMAS, JJ., dissent. SAYRE, J., not sitting.

MAYFIELD, J. I concur in the opinion and conclusion reached by Mr. Justice THOMAS. The authorities followed and relied upon by the majority, in my judgment, are not apt, and, for that reason, ought not to control the decision in this case. The bills in those cases were for objects and purposes entirely different from the objects and purposes of the bill in this case. The one class seeks the jurisdiction and powers of equity, to award new trials in cases which have proceeded to final judgment in courts of law. The other class, to which this case belongs, seeks to enjoin prosecutions of pending actions at law. The one class seeks to have two or more trials in courts of law; the other seeks to prevent any trial in such courts. The objects and purposes of the one class are diametrically opposed to those of the other. The purpose of the bill in this case is to enjoin the prosecution of an action of ejectment in a court of law, not to award another trial in a court of law, as was the purpose of the action in the cases followed by the majority. The bill in this case seeks to enjoin and prevent the prosecution of a purely technical and legal action, because to allow it to be so prosecuted would be unconscionable and inequitable, and would allow the plaintiff to use the court of law as an instrument with which to perpetrate a fraud upon the complainant in the court of equity. The only similarity between the two classes is that one seeks relief against a wrong already perpetrated, while the other seeks to prevent it from being perpetrated or consummated in the first instance.

The majority treat the bill in this case as if its main equity sought to have a new trial in the chancery court, as for the sale of lands for partition, when no such relief is sought. The bill in this case, as an incident to the injunctive relief sought, and to remove a cloud from complainant's title, and to prevent the respondent, and others in the future, from bringing actions of ejectment against complainant, asks to have plaintiff's deed and the records of the chancery court corrected of purely clerical errors, the result of accident and mistake on the part of the scriveners who prepared the papers in the proceedings in the court of equity, which mistake resulted in forming a cloud upon complainant's title. No one disputes the validity of the proceedings in the chancery court, or seeks to set aside the decree. All that is sought, as to it, is to correct the proceedings to the cure of purely clerical errors; that is, errors of accident or mistake on the part of the scriveners in preparing the papers.

Partition proceedings are strictly in rem, and not in personam. It is not necessary that all the joint owners be parties to the proceeding or have notice thereof. Lyons v. Hamner, 84 Ala. 197, 4 South. 26, 5 Am. St. Rep. 363. The court takes jurisdiction of the land which is jointly held, as it does of property attached, and deals with the thing, not with the person; and after it is partitioned, it says, in the decree, which joint owners shall have each particular part so partitioned. If it cannot be so partitioned as to afford equity to each tenant in common, the court sells the thing it would otherwise have partitioned, and divides the purchase price, in lieu of the land.

It appears here, without dispute—that is, it is alleged in the bill, and the demurrer confesses the allegation—that the 40 acres

of land in question was not a part of the thing sought to be partitioned; that it was not in fact or in law partitioned; that the court never acquired jurisdiction of it for that purpose; that no one of the tenants in common ever thought it was to be, or was in fact, partitioned; that the purchaser never thought he was buying it, or that he did in fact or in law buy it, and, as conclusive evidence of this, he took possession of all that was sold and all that he bought, and never then claimed this land, or any more land. It further clearly appears that several years after the sale the purchaser rented this very land from complainant, and that he never asserted any claim or title thereto, as purchaser, until by chance or accident some one happened to discover this clerical error in the proceedings in the chancery court and in his deeds, and that when he was informed of this fact he sought to take advantage of it, and thus get possession of complainant's land, not his own land.

The main equity of this bill is to enjoin prosecution of the action of ejectment. The incidental equity is to remove a cloud from title, and this cloud is to be removed by correcting purely clerical errors in appellant's deed, and similar errors and mistakes in the records of the chancery court, which resulted in or led to the error in the deed.

Mr. Justice THOMAS concurs in these views of the writer.

### On Rehearing.

THOMAS, J. A reversal of this cause should not be had on the authority of Norwood v. L. & N. R. R. Co., 149 Ala. 151, 42 South. 683, and De Soto Coal Mining & Development Co. v. Hill, 194 Ala. 537, 69 South. 948, Id., 188 Ala. 667, 65 South. 988, and cases there cited.

In Norwood's Case, a judgment was rendered in the circuit court, a court presided over by a judge under the Lusk Act, against the Louisville & Nashville Railroad Company on the 20th day of January, 1904, such date being within the time for holding the circuit court in Limestone county, prescribed by previous statute. At such time this presiding judge was a de facto judge, and the judgment in question was valid. The motion made by the defendant in judgment, to set the judgment aside, was not attempted to be granted until after the expiration of that term of the court, and this purported order granting a new trial was without authority of law. Hale v. Kinnaird, 76 South. 954.[1] The Lusk Act being unconstitutional, the court was not in session at the time of the attempted order granting the motion for a new trial, and therefore the valid judgment was not affected by such attempted action or order. Both the plaintiff and the defendant had mistaken the law and proceeded with the trial to judgment, on the erroneous assumption that the Lusk Act was consti-

tutional, and that the court was in lawful session at the time of the attempt to set aside the judgment. Finding itself concluded by such judgment, and that the time for appeal had expired, the defendant in judgment filed its bill in equity to set aside the judgment because of this mutual mistake of law. This court properly held that the chancery court was without jurisdiction. A careful consideration of the opinion by Mr. Justice Simpson in Norwood's Case will show that that decision and the many authorities there collected support the dissenting view heretofore announced in the instant case.

In the De Soto Case, supra (194 Ala. 537, 69 South. 948, Id., 188 Ala. 667, 65 South. 988), the original suit was at law, for personal injuries to a minor under 14 years of age, and resulted in a judgment for the plaintiff. A bill was thereafter filed to enjoin the collection of the judgment, on the theory or ground of fraud on the part of the plaintiff in an extrinsic or collateral matter —that is, that the plaintiff had submitted perjured or forged testimony in the trial at law to support the averred fact of his minority. We have no difference of opinion as to the governing principles in the De Soto Case announced, to the effect that fraud, to be vitiating, must be in the very act of obtaining the judgment, or in its concoction, and hence "must be extrinsic or collateral to the matter which was tried and determined by the judgment in question," that equity will not annul a judgment at law because of the use, on the trial, of forged documents or perjured testimony, and that misrepresentations by a party to the suit, as to the merits of his cause, do not amount to the preventive act contemplated by the rule that:

"When a party is prevented from discovering the defense by the act of the opposite party, unmixed with fault or negligence on his part, ordinary diligence is excused."

What we do say is that the application of such cardinal rules to the facts averred in the bill in the De Soto Case does not conflict with the correct theory on which the bill was filed in the case at bar, to which the chancellor overruled appellants' demurrers. In the instant case, we are not dealing with a case of "extrinsic fraud" or misrepresentation, or one that involves an act that prevented the party from discovering the defense of the opposite party, though ordinary diligence is shown by the injured party, but with a case of mistake of fact, of "extrinsic fact," averred to have been entertained and acquiesced in by the parties before, and at the time of, the judgment, sale, and purchase, and which prevented a litigation in the law court of the complainants' title to the land in the partition suit. That is to say, adopting the pungent phrasing of Mr. Pomeroy:

"There has been no fair adversary trial at law."

[1] 200 Ala. 596.

That author further on says:

"A distinction is made between fraud, accident, mistake, and the like, relating to the subject-matter of the action, and similar elements relating to the conduct of the suit. Fraud relating to the subject-matter is not of itself sufficient ground for relief. Where it relates to the conduct of the suit, as where it prevents a party from asserting his rights, there is no fair adversary proceeding, and equity will interfere. The courts commonly speak of the former class as intrinsic, and of the latter as extrinsic, fraud, etc. Thus it is generally said that it is extrinsic fraud, mistake, and the like, which are grounds for relief." 6 Pom. Eq. Jur. p. 1092; 2 Pom. Eq. Rem. § 648.

The fraud averred in the De Soto Case was of the intrinsic class—of the subject-matter of the suit at law by Hill—and it was held to afford no basis for relief. The mistake of fact on which the present bill was grounded was of extrinsic facts, and it was participated in by the parties to the partition suit, by the purchaser at the sale, and by the court in confirming the sale. This mistake of fact continued to exist between the parties to the bill up to, and beyond, the time within which a statutory bill for review could have been filed by appellees. In view of the peculiar facts of the De Soto Case, and the rules of law declared there applicable, that case cannot be deemed an authority on which to hinge a reversal of the judgment on demurrer in the case at bar.

It may not be beside the question to observe that it is also averred in complainants' bill that after the participation by appellants in the mistake of fact as to the sale and purchase of complainants' lands, and the confirmation of the sale, appellants obtained the possession of the lands by acknowledging complainants' superior title thereto and right of possession thereof, by becoming complainants' tenants under a lease for a term of years, extending beyond the period for filing a bill under the statute for review. Thus were complainants lulled by appellants into repose and continued acquiescence in said mistake of fact existing at the time of the sale and purchase, and confirmation thereof, in the partition suit. Under the circumstances averred, this operates as an equitable estoppel against appellants, to thereafter assert their title so acquired; and it would be unconscionable to allow them to enjoy the fruits of such mistake, to the extent of depriving appellees of their lands.

A rehearing is granted. And the decree of reversal heretofore rendered in this court is set aside and annulled, and the decree of the lower court is affirmed.

Affirmed.

MAYFIELD and SAYRE, JJ., concur. GARDNER, J., concurs in result. ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., dissent.