[Butt, et al. v. McAlpine.]

# Butt, *et al. v.* McAlpine.

## *Bill to Quiet Title.*

(Decided April 23, 1910, 52 South. 420.)

1. *Assignment; Benefit of Creditors; Title Vested in Grantee.*—A general assignment of all a debtor's property to pay debts generally vests in the grantee the entire indefeasible title, leaving the grantor no title legal or equitable.

2. *Trusts; Resulting Trust in Surplus of Assignment for Benefit of Creditors; Enforcement; Laches.*—Where the recitals of an assignment for the benefit of creditors do not negative the creation of a resulting trust in the surplus above the sum necessary to satisfy the debts, or in the unconverted corpus of the estate, the law raises an implied trust in favor of the assignor; but this right is no more than an equity which must be asserted in due time to avoid the imputation of laches.

3. *Same; Laches.*—The failure of an assignor for nearly forty years to assert a resulting trust in lands embraced in an assignment for the benefit of creditors, without excuse, during which time innocent purchasers interested adversely to such trust have invested considerable money in the lands and executed warranties of title thereto, as shown by the public records, raises the conclusive presumption that the trust has become extinguished.

4. *Same; Enforcement; Laches.*—Where the assignor and his successors in right have not been in possession of lands not used in extinguishing debts, but conveyed under a general assignment for that purpose, their equity could not be enforced after forty years, irrespective of whether complainant and his predecessors in bona fide claim of title were in actual possession in whole or in part.

5. *Equity; Laches; Right to Land; Enforcement.*—An equitable right to land not accompanied by possession presupposes title in another, and in order to obviate the rule as to laches appropriate and timely appeal to equity to enforce such right is essential.

6. *Same; Extinguishment; Presumption.*—The presumption of extinguishment of an equity in land arising from laches in asserting the same does not depend on the action or inaction of the bona fide claimant of the title itself, unless such action or inaction is infected with fraud or deception.

7. *Same; Laches; Grounds.*—Laches rests largely on acquiesence which presupposes notice of a status opposed to the title or equity sought to be enforced.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

[Butt, et al. v. McAlpine.]

Bill by John W. McAlpine against Carrie W. Butt and others to quiet title to certain lands. From a decree for complainant respondent appeals. Affirmed.

GAILLARD & MAHORNER, for appellants. The general rule is that powers or trusts cannot continue beyond the period required by the purposes of the same—*Fox v. Storrs*, 75 Ala. 265; *Young v. Bradley*, 101 U. S. 782; Perry on Trusts, sec. 312. An assignment for the benefit of creditors always leaves a resulting trust in the assignor, which, if his debts have actually been paid or the legal presumption of payment has arisen from lapse of time, entitles him to the possession of the assigned property, and a formal reconveyance thereof is not necessary. *Ross v. McJunkin*, 14 S. & R. 369; *Potter v. Page*, 54 Pa. St. 465; *Bole v. McKilvey*, 42 Atl. 42; *Farnsworth v. Doom*, 60 S. W. 712; *Kipp v. Hirsh*, 103 N. Y. 565; *Garvie v. Tisinger*, 46 Ohio St. 56; 3 A. & E. Enc. of Law, 151 et seq. If the parties allow twenty-nine years to lapse without taking any steps to compel the settlement of the mortgage debt, or to assert a right of property, the presumption of payment or settlement of disputed title arises.—*Goodwin v. Baldwin*, 59 Ala. 127; *Garrett v. Garrett*, 69 Ala. 429; *Bailey v. Butler*, 138 Ala. 156; *Mullen v. Walton*, 142 Ala. 166. Both assignee and creditors may, by their inaction and laches, preclude themselves from treating the trust as still open.—*Matter of Darrow*, 10 Dal. 141; *Gibson v. Rees*, 50 Ill. 383; *Martin v. Price*, 2 Rich. eq. 412. Adverse possession was not shown as to the whole tract.—*Woods v. Montevallo Co.*, 84 Ala. 360; *Lawrence v. Ala. St. L. Co.*, 144 Ala. 530; *Henry v. Brown*, 143 Ala. 446. Laches is charged but no knowledge is shown.—18 A. & E. Enc. 99 and 102. The authorities cited by appellee concede a resulting trust to F. C. Heard.—*Comer v. Constantine*, 86 Ala. 492.

GREGORY, L. & H. T. SMITH, and ERWIN & McALEER, for appellee. A deed of general assignment conveys an absolute title and there is no reversion to the grantor upon the payment of the debts.—9 Ballard Law of New Property, sec. 843; *Comer v. Constantine,* 86 Ala. 492, and authorities therein cited. The assignment in this case conveyed an absolute indefeasible title, and could not be diverted by anything short of a conveyance.— *Hicks Bros. v. Swift Creek M. Co.,* 133 Ala. 411. A beneficiary in a resulting trust cannot enforce his rights in a court of equity after having slumbered upon them for forty years, during which time innnocent third persons have acquired interest and expended their money upon the faith thereof.—*Gray v. Perry,* 111 Ala. 538; *Fuller v. Ames,* 108 Ala. 465; *Woodruff v. Stough,* 107 Ala. 327; *Lehman-Durr Co. v. Clark,* 85 Ala. 115; *Hodges v. Winston,* 95 Ala. 517; *Dixon v. McLarney,* 97 Ala. 392; *Caldwell v. Smith,* 77 Ala. 157; *Hill v. Huckabee,* 70 Ala. 187. The evidence discloses that those under whom the appellee claims were in the actual possession of the property as far back as 1865, and this possession having been once established must be presumed to have continued in the absence of anything to show that it has been interrupted.—*Marston v. Rowe,* 43 Ala. 285; *Clements v. Hayes,* 73 Ala. 284; *Echols v. Hubbard,* 90 Ala. 317; *Abbott v. Page,* 92 Ala. 575; *Hollingsworth v. Walker,* 98 Ala. 513. The appellants have concluded themselves by their own laches from establishing the equity here sought to be established.—*Lady E. C. I. & R. R. Co. v. Gordon,* 155 Ala. 536; *Nettles v. Nettles,* 67 Ala. 599; *Kerr v. Nicholas,* 88 Ala. 346; *Gannt v. Phillips,* 23 Ala. 278; *Gilmer v. Morris,* 80 Ala. 82. The appellee made out his case when he proved the actual possession of the property at the time of the filing of his bill, and that there was no litigation then

pending.—*Whitaker v. VanHoose,* 47 South. 741; *Dickinson v. Harris,* 47 South. 78.

McCLELLAN, J.—John W. McAlpine filed his bill to quiet title to certain lands in the county of Mobile against Cary W. Butt et al. The respondents, those with whom we are concerned, propounded, by answer, their claim to the land and, also, constituted their answer a cross-bill by which it was prayed that their title to the lands be vindicated and quieted, as against original complaint. The court below sustained the title of original complainant, and declared the cross-complainants to be without right or title to, or interest or claim in, the lands in question.

On December 5, 1846, Franklin C. Heard owned the real estate in controversy. Being unable, at that time, to discharge his just debts, Heard executed to James Elder and Benjamin M. Woolsey a general assignment of all his property for the benefit of his creditors. The consideration of the conveyance to Elder and Woolsey is recited therein to have been the "premises" we have indicated and a "just distribution of his (Heard's) estate and effects among his creditors *as also of the sum of $5.00 to him* (Heard) *in hand paid by the said James Elder and B. M. Woolsey, the receipt whereof is hereby acknowledged.*" (Italics supplied.) The conveyance, by express reservation, excepted from its operation the properties settled upon Emily W. Woolsey, who subsequently became the grantor's wife.

The general declaration of trust proceeds along the usual lines of such instruments. The specific directions for the application of the trust funds coming into the hands of Elder and Woolsey may be thus summarily stated: First. To retain and reimburse themselves for expenditures and expenses incurred in the creation and

[Butt, et al. v. McAlpine.]

administration of the trust. Second, third, fourth, and fifth. Out of the residue, and evidently in the order named, to pay and satisfy a demand to G. W. Matthews and also the following notes: One to the Fireman's Insurance Company, made by James Elder and indorsed by the grantor; one to the same company, made by the grantor and indorsed by James Elder; one held by the Bank of Mobile, made by the grantor and indorsed by James Elder; one held by Bancroft, made by the grantor and indorsed by James Elder; and one held by Ames, made by the grantor and indorsed by James Elder; two notes to the Matthews named. And, sixth, to distribute the "residue of the trust moneys, after fulfilling the trust aforesaid, * * * ratably and without preference or distinction to the creditors" of the grantor. James Elder and Benjamin W. Woolsey, as also of course the grantor, signed the instrument; and it was promptly filed for record in the probate office of the county of Mobile.

The title or rights asserted by the respondents (appellants) rest upon their being heirs at law of Franklin C. Heard, the grantor in the general assignment described. And the doctrine upon which they rely to sustain their asserted title or rights is, to state it generally, that where a trust of the character under consideration is created, and the trust is closed, the grantor or his successor in title or right is entitled to the surplus of the funds, or unconverted, corpus of the originally created trust estate, remaining after the satisfaction of the purposes of the trust; and, if a great period of time elapses after the time the money was demandable by the beneficiaries of the trust, viz., the creditor or creditors, a presumption of payment of the debts, or satisfying arrangement with the creditors, will be indulged, to the

end that the unused residuum may revert to the grantor or his successor in right.

The complainant grounds his claim to title to the real estate in question upon an unbroken chain of record title extending over a period of more than 40 years; but the absent link, back of that period, is that no deed from Elder and Woolsey is shown to have been, in fact, executed. The issue of adverse possession vel non, by those from whom complainant deduces his asserted title, is controverted in the evidence; but in view of the cause prevailing with us that issue cannot control the conclusion here.

The complainant, assailing the basis of the appellant's assertion of title or right to this real estate, invokes the rule of repose implied in the doctrine of laches, or upon the presumption arising after 20 years or more of inactivity in assertion of the right claimed, and upon this the further insistence that the grantor's interest, or that of his successor in right, in unconverted, after discharge of all debts of the grantor, corpus of the trust estate, was, at most, a resulting trust, and not a legal or equitable estate therein.

The respective contentions may have suffered, in force and breadth of statement, as the result of our effort to condense; but the general reason and effect of each insistence is at least indicated.

The decree below must be affirmed; and so in consequence of the application of well-recognized doctrine to the status presented by this record. That result may be justifiable upon other grounds; but it will suffice for present purposes of complete decision of this litigation, determining the rights vel non of the parties, to set down the reasons controlling, and on which we rest our conclusion in affirmance of the decree now assailed.

[Butt, et al. v. McAlpine.]

Generally speaking—that is, without reference to conveyances expressly providing for reverter to the grantor-debtor—a general assignment of all of a debtor's property for the purpose of paying his debts vests in the grantee the entire, indefeasible title, leaving in the grantor no title, legal or equitable.—*Comer v. Constantine,* 86 Ala. 492, 5 South. 773, and authorities therein cited; 4 Cyc. p. 218, and notes; 3 Am. & Eng. Ency. Law, p. 37.

If the recitals of the conveyance do not thwart the creation by operation of law of a resulting trust in the surplus over the sum employed to satisfy the debts of the grantor, or in the unconverted corpus, in whole or in part, of the trust estate, then in either or both the law creates the character of implied trust, viz., resulting in the grantor, in such surplus or unconverted part of the whole.—4 Cyc. p. 284, and authorities cited in note 26. In the very nature of things such an implied trust, to one's advantage, is an equity only—*Nettles v. Nettles,* 67 Ala. 599; *Tilford v. Torrey,* 53 Ala. 120.

This trust was created in 1846; and if to this we arbitrarily add 24 years, bringing the time up to 1870, and apply to that status the presumption of satisfaction of the purposes of the trust after the elapsing of so great a period, and further assume that the land in question was unconverted in the payment of the debts of the grantor, the appellants were then (1870), we grant for the argument only, entitled to resulting trust therein. From 1870—24 years after the creation of the trust and substantially a like period after the money was demandable by the creditors (*In re estate of Potter and Page,* 54 Pa. 465)—up to the filing of the bill in this cause, nearly 40 years had elapsed without any assertion by appellants, or their predecessors in right, of the resulting trust in these lands. In the meantime the

predecessors, in asserted right, of the original complainant, had paid taxes on these lands and the judicial and recordation records of the county of Mobile bore repeated evidences that others were interested adversely to the resulting trust claimed by appellants, investing in the lands considerable sums of money, and subjecting themselves to the liabilities of warranties of title. In the light of these recorded acts of innocent grantors and grantees to this land, the appellants, on the most favorable view to their assertion, at this time, of implied trust, we cannot avoid the application, against appellants, of the conclusive presumption, strongly pressed by the solicitors for appellee, that, after complete inactivity in the assertion of their claimed trust for nearly 40 years, and without any semblance of excuse therefor, it has been extinguished in any one of the forms by which that right could become extinct. Such is the doctrine now well settled in this court, as will appear by reference to the following authorities: *Black v. Pratt Coal Co.,* 85 Ala. 504, 5 South. 80; *Roach v. Cox,* 49 South. 578; *Semple v. Glenn,* 91 Ala. 245, 6 South. 46, 9 South. 265, 24 Am. St. Rep. 894; *Woodstock v. Roberts,* 87 Ala. 436, 6 South. 349; *Bass v. Bass,* 88 Ala. 408, 7 South. 243.

The basis and hope of the doctrine is repose—repose in titles bona fide claimed and repose against litigation, to resist which the passing of so great a period as 20 years is well anticipated to operate to the uninvited prejudice of those called upon, at that late day, to defend.

But it is urged for appellants that there was no such possession of the land in question as effected to bring notice of adverse claim to their trust. That argument might have force if the reliance of appellants was a character of title drawing to it constructive possession.

[Butt, et al. v. McAlpine.]

In that event, doubtless, there would be no necessity, as indeed there would be no occasion, to take account of mere proclamations of adverse claim to the land—a claim unsupported by actual possession in whole, or in part under color of title of the land. But such is not appellants' reliance. Granting all that could be well insisted on, they had an equity only. Such a right, practically lying in action only, so far as possession is concerned, in itself recognizes legal title in another. To reduce such right to a tangible form, appropriate appeal to equity is essential, unless, of course, the parties in interest themselves effect the like result. It, accordingly, necessarily follows that the beneficiary of a resulting trust must, himself, become the actor in order to have the right to the possession of that to which the implied trust entitles him. The very existence of the implied trust is a constant warning that some other holds the legal title, ordinarily drawing to it constructive possession, to the subject of the trust in his favor. Whether, in point of fact, the adverse claimant has the true legal title, cannot be important when the inquiry is: Has the beneficiary of the implied trust remained, with respect to the assertion of his right, wholly inactive for 20 years or longer, and so without excuse or recognition of his right by those against whom he could enforce it.

If it should be ruled that only actual possession, in whole or in part under color of title extending such partial possession to the whole, not otherwise actually adversely possessed, would operate to impose the duty on the beneficiary of a resulting trust to act, if he would avoid the presumption arising from inactivity for 20 years or more, in assertion of his mere equity, the result would be to create the anomaly of relieving the beneficiary of the application of the presumption on a con-

dition that was entirely consistent with the implied trust right of the beneficiary; to, in effect, shift the inspiration of activity to the bona fide claimant of the legal title to voice his claim by actual possession, at least in part, of the land in which the resulting trust existed. That might be, doubtless is, good doctrine when laches is the answer relied on to defeat an asserted title or equity, because laches rests, in a large degree, upon acquiescence, and acquiescence presupposes notice of a status opposed to the title or equity sought to be enforced.—*Haney v. Legg,* 129 Ala. 619, 30 South. 34, 87 Am. St. Rep. 81, and authorities cited therein. But the presumption with which we are concerned does not depend upon the action or inaction of the bona fide claimant of the title itself, unless such action or inaction is infected with fraud or deception. The shoe is on the other foot—that of the beneficiary. He it is who must first move, unless excused by fraud or deception avoiding the imputation of his lack of diligence. The principle cannot be so different as to deny the influence of the analogy of an inactive mortgagee out of possession. In such case, after 20 years of inactivity to enforce undoubted (originally) right, the mortgagee cannot prevail.—Authorities supra.

In that instance, no act is required, in the absence of fraud or deception, to put into operation the running of the period, which, when completed, concludes against such right; and this, we apprehend, is due to the fact that on the mortgagee out of possession rests the obligation to become the actor in the enforcement of his rights.

That original complainant and those through whom he claims, reaching back for more than a third of a century, are and were claimants in good faith of the title to these lands, appears without doubt. Covering

[McGrew & Sons v. Earnest, et al.]

this great period, as respects these lands, deeds thereto,. based on reasonably valuable considerations, were recorded, mortgages were so recorded, litigation followed upon the assertion of rights in the premises, reaching this court in the case of *Masich v. Shrearer*, 49 Ala. 226,. and taxes were paid.

No fraud or deception appears to have been practiced by these consecutive claimants; nor, on the other hand, is any semblance of excuse offered or suggested for such complete, long-continued inactivity on the part of the beneficiaries of the trust running to them.

To conclude, on this theory of the case, we hold that such inactivity, without justification of excuse, closes the courts to the enforcement of the equity of appellants, in these lands, they or their predecessors in right not having been in possession of the land; and so, whether original complainant and his predecessors in bona fide claim of title were in actual possession of the land, in whole or in part.

The decree is therefore affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.