(93 South. 719)
### HEFLIN v. HEFLIN. (6 Div. 454.)

(Supreme Court of Alabama. June 8, 1922. Rehearing Denied June 30, 1922.)

**1. Equity ⬅143—Bill must show with certainty and clearness averred rights.**

Bill in equity must set forth with certainty and clearness facts essential to show the asserted right; otherwise it is subject to demurrer.

**2. Trusts ⬅77—Payment necessary at date of delivery of deed or original transaction, where there was only a parol contract of purchase.**

Within the rule that, to raise a resulting trust in favor of one who, as one of the purchasers of land, title to which was taken in the name of the other, made payment of part of the purchase money, he must have made the payment before or at the time of the original transaction, the date of delivery of the deed is the time of such transaction, there having previously been only an inoperative parol agreement.

**3. Limitation of actions ⬅103(4)—Trusts ⬅365(3)—Limitations or laches held not available against bill to establish and enforce resulting trust in absence of notice of repudiation.**

No statute of limitations or application of the rule of laches is available against bill to establish and enforce a resulting trust, the bill

being filed within 20 years of the acquisition of title; it being averred that years after such acquisition respondent admitted the trust, and that at no time did complainant have notice or knowledge of any repudiation thereof by him.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by Harrington P. Heflin against Wyatt Heflin, to have a resulting trust declared on a half interest in lands. From decree overruling demurrers to the bill, respondent appeals. Affirmed.

The purchase money note, made Exhibit B to the bill, is as follows:

$540.00.

On the 1st day of January, 1892, I promise to pay J. M. Foster five hundred & forty dollars, at Shreveport La., as part payment of the purchase money of an undivided one-half interest in his Compton property, situated in Jefferson county, Alabama, and if unpaid at maturity to bear interest thereafter at 8% per annum until paid—with the privilege of paying this note at any time before its maturity, and in case I do so a proper discount is to be made from the face of the same for interest included therein. Jan'y 1st, 1891.                    Wyatt Heflin.
Witness: H. P. Heflin.

Rudolph & Smith, of Birmingham, for appellant.

The bill must contain allegations to show that the complainant is entitled to relief, and a failure to set forth every essential fact will render it fatally defective. 135 Ala. 607, 33 South. 696; 26 Ala. 405; 62 Ala. 192, 34 Am. Rep. 4; 62 Ala. 579; 79 Ala. 351; 77 Ala. 349; 95 Ala. 541, 11 South. 56; 117 Ala. 430, 23 South. 534; 58 Ala. 88; 147 Ala. 183, 41 South. 1000; 152 Ala. 375, 44 South. 616; 164 Ala. 456, 51 South. 318; 205 Ala. 514, 88 South. 648. The trust must spring by implication of law from the facts alleged, and not from any parol agreement. Authorities supra. If the amount paid be indefinite or uncertain, or unless the payment be of an aliquot part of the consideration, no trust results; a general contribution toward the entire purchase is not sufficient. 79 Ala. 351; Tiffany on Real Property, 229. "Vigilantibus non dormientibus æquitas subvenit." Pom. Eq. Jur. (3d Ed.) § 418; 76 Ala. 501; 108 Ala. 527, 18 South. 743. The trust sought to be enforced was barred by the statute of limitations of 10 years. Code 1907, § 4834; 55 Ala. 525; 64 Ala. 385; 67 Ala. 599; 86 Ala. 173, 5 South. 440; 118 Ala. 273, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160; 121 Ala. 542, 25 South. 704; 95 Ala. 541, 11 South. 56; 121 Ala. 136, 25 South. 1006; 121 Ala. 311, 26 South. 3; 128 Ala. 383, 30 South. 405; 135 Ala. 131, 33 South. 175, 93 Am. St. Rep. 17; 137 Ala. 219, 33 South. 874. The facts averred in the bill are not sufficient to excuse the delay. 83 Ala. 396, 3 South. 698; 176 Ala. 276, 58 South. 201.

Henry Upson Sims, of Birmingham, for appellee.

The trust of a legal estate results to the man who advances the purchase money. Lewin on Trusts *163; Beach, Tr. & Tr. § 117; Perry on Trusts (5th Ed.) § 133; 62 Ala. 129; 64 Ala. 98; 79 Ala. 351; 168 Ala. 314, 52 South. 914; 196 Ala. 221, 72 South. 74. The statute of limitations does not bar charging the defendant with a trust short of 20 years from his acquisition or title. 132 Ala. 201, 31 South. 476; 200 Ala. 358, 76 South. 124; 201 Ala. 10, 77 South. 393, 129 Ala. 619, 30 South. 34, 87 Am. St. Rep. 81.

THOMAS, J. The bill was to declare a resulting trust upon a half interest in lands. From the decree overruling demurrer, respondent appeals.

Salient averments of the bill are that on January 19, 1901, defendant acquired from the widow and certain of the heirs of J. M. Foster, deceased, "an undivided half interest in certain real estate in Jefferson county, Ala.," which is described in detail, and a copy of the deed made a part of the bill by exhibit; that "said deed was executed to defendant by the said heirs of J. M. Foster in consummation of an agreement to purchase the land thereby conveyed which had been arranged by" complainant "with the said J. M. Foster during his lifetime, the said Foster agreeing to sell your orator [appellee] and defendant jointly an undivided half interest in the said lands"; that while it was "definitely understood by both the said J. M. Foster and the defendant that the land was being sold to your orator and the defendant jointly," it was "agreed that the defendant alone should sign the notes, and, when the notes were fully paid, your orator requested that the deed be executed to the defendant alone, which was done." However, it is averred complainant provided "more than his half of the money to pay the notes as they were met," and that complainant made no claim to more than "a half interest in the title received by defendant on January 19, 1901, in consummation of the purchase."

The averments of the fourth and fifth paragraphs of the bill are that there was no written agreement between Foster or his heirs, on the one hand, and complainant and defendant, on the other, for the purchase of the land, "except the said purchase-money notes executed by the defendant as aforesaid, as an example of which" is Exhibit B, the first of said purchase notes, attached to the bill. It is further averred that the only difference between the other notes and that exhibited was "that the second note was for $583.20, payable January 1, 1893; the third note was for $629.85, payable January 1, 1894; the fourth note was for $680.43, payable January 1, 1895; and the fifth note

was for $734.86, payable January 1, 1896." This indorsement was written across the exhibit (B):

"Settled by N. York draft drawn by First Natl. Bank, Birmingham, Ala. No. 91711, on Hanover Natl. Bank of N. York, dated Dec. 29, 91."

It is further averred that, when the first and second notes fell due, defendant not being able to furnish any of the money to meet them, complainant provided all of the money therefor; but when the remaining three notes successively became due, neither complainant nor defendant was "able to meet them; so the payee allowed them to be renewed in * * * form as Exhibit B under the date of April 1, 1896, one * * * being for $793.42, payable January 1, 1897, another for $856.91, payable January 1, 1898, and the last for $925.44, payable January 1, 1899"; that the first of "these renewal notes were paid by your orator on or about its maturity," and the last two notes were "finally paid by your orator about January, 1901"; that, while complainant cannot say at what times the defendant made payments to him for the latter's share of such payments made by complainant on the purchase price of the half interest in said lands, it is nevertheless recognized "that the defendant did repay him his share in full," and that the respective parties are averred to have "had equal amounts invested in the property."

Further averments are that the title and relation of said parties to the property remained substantially unchanged from the receipt by defendant of the Foster deed, dated January 19, 1901, "until, to wit, October 30, 1912," except that one or the other of the parties "advanced the money for the taxes upon their half of the property as they fell due" and "other minor charge or expense," and that it may be that, on some occasions, with complainant's consent, defendant "joined with the Foster heirs in selling and conveying small lots or parcels of the property, but of this" complainant "is not certain," and that the undivided one-half interest in the lands so conveyed on January 19, 1901, to respondent by the Fosters for the use and interest of complainant and respondent was partitioned, divided, and set apart on February 22, 1913—bill to that end being filed October 30, 1912, by T. Oliver Foster Williams, one of the heirs of J. M. Foster, deceased—when a deed "was executed under the direction of the court, conveying to the defendant, Wyatt Heflin, what was taken to be the equivalent of an undivided one-half interest in the total property the title to which had been held by him and the heirs of the late J. M. Foster; and a copy of the deed then executed to the defendant by the register is hereto attached as Exhibit C.

And since the execution of said deed Exhibit C the defendant has held the entire title to the properties described therein for the equal benefit of himself and your orator, as the equivalent of their former undivided half interest in the entire property; that is to say, your orator became entitled to an undivided one-half interest in the property described in the register's deed Exhibit C instead of his undivided one-fourth interest in the entire property described in the deed to the defendant from the Foster heirs in January, 1901, Exhibit A; and your orator and the defendant recognized their interest as such."

The ninth paragraph of the bill contains the statement that—

"The defendant has never made him (complainant) a complete statement and accounting of all the moneys he has received from the property by sale and otherwise, nor of the outlays in taxes and improvements imposed by law which he has made for their joint benefit. Nor has the defendant ever executed to your orator any acknowledgment in writing that he (the defendant) holds an undivided half interest in the property for your orator's benefit, although he has repeatedly admitted to your orator in the presence of others that he does so hold; and on one occasion, in September, 1914, in conformity with a request from your orator, he executed to your orator a deed to two of the said lots held by them jointly, without even requiring payment for his own half interest therein. So your orator verily believes that the defendant fully admits your orator's equal ownership with him in all the property."

Complainant further says that he has received from defendant since the aforesaid sale the sum of $5,000 and a conveyance to him of two lots from said tract of land as a part of, and in recognition of their joint ownership in, said lands. Complainant concludes his charge by the averment that he "is entirely ignorant of the actual state of balance of indebtedness between them on account of the property; and the defendant is unable, or has not taken the time to tabulate the items pro and con, or * * * to inform your orator what they are, although" he has "requested him to do so." The purpose of the bill is averred to be to fix complainant's "interest in the land or to determine the correct balance of money which may be due" by the respective parties on account of their holdings in the same, and as it is their "mutual duty to have their matters definitely settled by the judgment of a court of equity."

The prayer of the bill is that respondent be declared a trustee for complainant to the extent of a half interest in the lands and the securities or the proceeds of the sale of lots off of the same; that an accounting is necessary, and be directed to determine any balance existing in favor of either party by reason of the trust, and that it be fixed as a

charge against the interest of him whose duty it is to pay, if not paid within such time as the court may fix; that partition of such property and securities or proceeds of the sale of portions of the property be ordered, and that "all things necessary to effectually settle the trust between them" be declared and ordered. There is also the averment that complainant "places himself in the hands of the court, and offers to do all things on his part that may be necessary for him to do in equity and good conscience," and concludes with the general and appropriate prayer for process.

Counsel, stating the effect of respondent's demurrer directed to the bill, and to each and every clause, paragraph, allegation, and prayer contained therein, separately and severally, say that the several grounds thereof are that the bill is lacking in equity; that the facts alleged "are not sufficient to constitute a constructive trust"; that facts are not stated with precision sufficient to constitute a resulting trust, and that, from the facts averred, it affirmatively appears that the complainant was guilty of laches or is barred by statute of limitation.

[1] The general rule of pleading in equity is that the bill must contain allegations to show complainant's right to the relief which he seeks, and, failing to set forth the essential facts necessary with sufficient certainty and clearness to enable the court to see plainly that he has such right or title to maintain the bill to the end prayed or warranted under the general prayer, the defect may be challenged by demurrer. This is the early statement of the requirement of equity pleading—that it must show with certainty and clearness that complainant has the averred right that warrants protection in respects indicated, and informs respondent sufficiently of the nature of the case he is called upon to defend (Strange v. Watson, 11 Ala. 324, 336; Cockrell v. Gurley, 26 Ala. 405, 408; Goldsby v. Goldsby, 67 Ala. 560, 562; Overton v. Moseley, 135 Ala. 599, 608, 33 South. 696; Wefel v. Stillman, 151 Ala. 249, 261, 44 South. 203; Manchuria S. S. Co. v. Donald & Co., 200 Ala. 638, 77 South. 12; Frederick v. Hartley, 202 Ala. 43, 79 South. 381; Eutaw Ice, etc., Co. v. Town of Eutaw, 202 Ala. 143, 79 South. 609; Story's Eq. Pl. 23, 24); and such averments must be shown by clear, full and convincing proof (Gilbreath v. Farrow, 147 Ala. 183, 41 South. 1000; Shelton v. Aultman, 82 Ala. 315, 8 South. 232; McCall v. Rogers, 77 Ala. 349; Mobile v. Randall, 71 Ala. 220; Moog v. Strang, 69 Ala. 98; Lehman v. Lewis, 62 Ala. 129; Patton v. Beecher, 62 Ala. 579).

[2] Rules governing resulting and constructive trusts have been frequently discussed by the courts and need not be repeated. Fowler v. Fowler, 205 Ala. 514, 88 South. 648; Smith v. Dallas Comp. Co., 195 Ala. 534, 70 South. 662; Hughes v. Letcher, 168 Ala. 314, 52 South. 914; Watkins v. Carter, 164 Ala. 456, 51 South. 318; Butts v. Cooper, 152 Ala. 375, 44 South. 616; Gilbreath v. Farrow, supra; Long v. King, 117 Ala. 423, 23 South. 534; Manning v. Pippen, 95 Ala. 537, 11 South. 56; Bibb v. Hunter, 79 Ala. 351; McCall v. Rogers, supra; Patton v. Beecher, supra; Lehman v. Lewis, supra; Hodge v. Joy (Ala. Sup.) 92 South. 171; [1] South v. Pinion, 207 Ala. 122, 92 South. 420; 3 Pom. Eq. Jur. (3d Ed.) § 1037.

Mr. Lewin, in his work on Trusts, discusses resulting trusts upon purchases in the name of a third person, and adopts as the general rule that announced by Lord Chief Baron Eyre in the leading case of Dyer v. Dyer, 2 Cox, 93:

"The clear result of all the cases, without a single exception, is that the trust of a legal estate, whether freehold, copyhold, or leasehold; whether taken in the names of the purchaser, and others jointly, or in the name of others without that of the purchaser; whether in one name or several, whether jointly [Ex parte Houghton, Gribble, 17 Ves. 251; Rider v. Kidder, 10 Ves. 360, 367] or successive [Withers v. Withers, Ambl. Eng. Ch. Rep. 151; Howe v. Howe, 1 Vern. 415], results to the man who advances the purchase money." Redington v. Redington, 3 Ridgeway, 106, 177; Finch v. Finch, 15 Ves. 43, 49; Crop v. Norton, 9 Mod. Rep. 233, 235; Murless and Betty, His Wife v. Franklin, 1 Swanston's Eng. Ch. 13, 17

—and says of the reason for the rule that "it goes on a strict analogy to the rule of the common law, that where a feoffment is made without consideration, the use results to the feoffer," the person enfeoffing another in fee. And further:

"But no trust will result unless the person advance the money in the character of a purchaser; for if A. discharge the purchase money by way of loan to B., in whose name the conveyance is taken, no trust will result in favor of A., who is merely a creditor of B."

See Bartlett v. Pickersgill, 1 Eden, 515; Crop v. Norton, supra; 1 Lewin on Trusts (8th Ed.) star pp. 162, 163.

Mr. Beach declared that "a definition [of an implied trust] may be sufficiently accurate as applied to one class or kind of resulting trusts, while it fails as an explanation of resulting trusts as a whole, and as distinguished from trusts of other general classes," and assigns to the class of an implied trust that trust raised by implication for the benefit of a party granting an estate, such as trusts raised by implication for the benefit of a person who advances the purchase money of an estate, etc. Beach on Trusts & Trustees, § 114. He says:

"No rule has been established by courts of equity for determining where the conveyance of the legal title carries with it the equitable

[1] 207 Ala. 198.

interest. Each case is to be decided upon its own merits, and as far as possible the intention of the maker is to be learned from the general tenor and drift of the instrument. The presumption depends upon the circumstances." Section 117.

Mr. Perry cites many applications of the rule that—

"The trust must result, if at all, at the instant the deed is taken, and the legal title vests in the grantee. No oral agreements, and no payments, before or after the title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself. But if the transaction creates a trust, a subsequent act may enlarge its effect, as by removing a mortgage to which the trust was subject. * * * And the money must be advanced and paid in the character of a purchaser; for if one pay the purchase money by way of loan for another, and the conveyance is taken to the other, no trust will result to the one who thus pays the purchase money; on the other hand, if one should advance the purchase money and take the title to himself, but should do this wholly upon the account and credit of the other, he would hold the estate upon a resulting trust for the other. And if partly on the account and credit of another, he would hold as trustee pro tanto." 1 Perry on Trusts (5th Ed.) § 133; 3 Pom. Eq. Jur. § 1038.

Such is the rule announced by this court. Coles v. Allen, 64 Ala. 98; Rhea v. Tucker, 56 Ala. 450. See, also, Marvin v. Brooks, 94 N. Y. 71; Leggett v. Leggett, 88 N. C. 108; Brown v. Cave, 23 S. C. 251; Mims v. Chandler, 21 S. C. 480; Cook v. Sherman (C. C.) 20 Fed. 167, 4 McCrary, 20.

The application of the rule of resulting or implied trusts has been made by this court. In Lehman v. Lewis, supra, Mr. Chief Justice Brickell said:

"It is the unquestionable doctrine of courts of equity, in the absence of statutes providing otherwise, that if the purchaser of lands, paying the price with his own money, takes the conveyance in the name of another, the trust of the lands results by construction to him from whom the purchase money moves. * * * The whole foundation of this class of trusts is the payment before, or at the time of the purchase, of the money by the cestui que trust, or by the trustee, or the agent, of funds which are the funds of the cestui que trust, or of the principal. Mere parol agreements, or parol declarations of the purchaser that he is buying for another, or that the purchase is intended for the benefit of another, without the employment of the money of the other, will not create a resulting trust."

And again he quotes the rule of Botsford v. Burr, 2 Johns. Ch. 405, as he did in Coles v. Allen, supra.

It is announced in this jurisdiction that the person who is to be charged as trustee might even be lending money to the cestui que trust and still the doctrine of a resulting trust may apply, thus:

"The funds used may have presently become the property of the other party, by a loan or advance to him by the purchaser who takes the title to secure to himself repayment of such loan. And it must always be made to clearly appear that the purchase was with funds previously belonging to the party asserting the trust, or that it was made for him and the purchase money presently advanced by the purchaser as a loan to him, for the security of which the legal title is taken to and in the name of the purchaser. * * * Where the purchaser uses means previously belonging to himself in making the payment, it must appear that he purchased for the other, in the sense of intending the original transaction to be an equitable sale directly to the other, and the payment by that other out of funds which he has loaned to him for the purpose." Milner v. Stanford, 102 Ala. 277, 280, 14 South. 644, 645.

In Coles v. Allen, 64 Ala. 99, 106, 107, Mr. Chief Justice Brickell says:

"But, to the creation of the trust, as was said by Chancellor Kent, in Botsford v. Burr (2 Johns. Ch. 414), 'the trust must have been coeval with the deeds, or it can not exist at all. * * * The resulting trust, not within the statute of frauds, and which may be shown without writing, is when the purchase is made with the proper moneys of the cestui que trust, and the deed not taken in his name. The trust results from the original transaction, at the time it takes place, and at no other time; and it is founded on the actual payment of money, and on no other ground. It cannot be mingled or confounded with any subsequent dealings whatever. They are governed by different principles; and the doctrine of a resulting trust would be mischievous and dangerous, if we once departed from the simplicity of the rule.' The authorities in this court, and elsewhere, following this clear statement of principle, certainly leave no room for doubt, that a resulting trust springs from the original transaction, and that it is impossible to raise it, so as to divest the legal estate, by the application of the funds of a third person, whether he is a principal or a cestui que trust, to satisfy the unpaid purchase-money."

A recent application of this rule is contained in McKleroy v. Musgrove, 203 Ala. 603, 614, 84 South. 280, 290, where it was declared that—

"The trust doctrine * * * must rest upon the original overdraft * * * for a trust in such case can result only from the original transaction, and the application of trust funds to the payment of the purchase-money must be coeval with the conveyance; a subsequent use of trust funds in payment of the trustee's obligation is not sufficient to create a trust."

In Guin v. Guin, 196 Ala. 221, 222, 223, 72 South. 74, a verbal agreement to purchase lands had been made more than a year before the conveyance between the vendor and vendee, sought to be charged as trustee; and the court said of the facts of that case:

"The 'time of the purchase,' however, within the operation of this rule, can only mean the time of the acquisition of the title, whether

legal or equitable. Any other application of the rule would make of it a senseless technicality, and the language of the authorities does not so require. In the present case, *complainant paid the money before the purchase by her husband, for up to the time he receives the deed there had been no purchase* [italics supplied], but only a verbal agreement, abortive in operation, and void in law. A trust therefore resulted in favor of complainant when the real and only purchase was made on November 25, 1907; the evidence on this point being full, clear, and convincing. Carter v. Challen, 83 Ala. 135."

The date of the purchase, indicated by the justice, referred to the date on which the deed was taken and delivered to the grantor. This was held to be the "original transaction" determining the relations of the party as to the subject-matter under the doctrine of resulting or implied trusts. The original transaction was not of the date of the parol agreement, antedating the date and delivery of the deed of and on November 25, 1907. This was a wise application of the rule in keeping with the justice, reason, and letter of the rule. So, in the instant case, a material part of the purchase money—more than half—is averred to have been paid before the original transaction; the time of purchase in the instant case was the payment of the purchase price and the execution and delivery of the deed from the Fosters to respondent.

[3] The further insistence is made that, by reason of plaintiff's long delay, if he had the rights averred in his bill, he may not enforce the same, under the averred facts. Complainant is not prevented by the statute of limitation, or the rule of laches, from charging the defendant with a trust, under the facts averred, short of 20 years from the acquisition of title. Veitch v. Woodward Iron Co., 200 Ala. 358, 361, 76 South. 124; Martin v. Kelly, 132 Ala. 201, 31 South. 476. The reasonable cause of the delay in filing the bill is averred to have been that at no time did complainant have notice or knowledge of respondent's repudiation of the trust, Haney v. Legg, 129 Ala. 619, 30 South. 34, 87 Am. St. Rep. 81; Sims v. Riggins, 201 Ala. 99, 101, 103, 77 South. 393. Though the bill in this cause was filed on January 18, 1921, a day or so antedating the expiration of the time for the bar by prescription from the date of the Foster deed to the respondent—January 19, 1901—yet it is specifically averred that it was admitted by respondent that he was trustee for complainant in an undivided one-half interest in the lands, and was such as late as 1914, and often theretofore by contribution and payment of purchase money, taxes, expenses of administration, and maintenance of the trust properties. So, also, by his conveyance without consideration to complainant of two of the lots, and by payment to him of about $5,000 of or on his share of the purchase price for which respondent had sold certain parcels or lots of the land. Nor are the facts so changed that it would be inequitable to enforce the trust between the parties. When the averments of the bill are considered no ground is presented for the application of the rule of practice that demurrer will lie for laches or statutory limitation appearing on the face of the bill (South v. Pinion, supra; Veitch v. Woodward Iron Co., supra; Gayle v. Pennington, 185 Ala. 53, 64 South. 572; Fowler v. Ala. Iron & Steel Co., 164 Ala. 414, 51 South. 393; Scruggs v. Decatur M. & L. Co., 86 Ala. 173, 5 South. 440; Greenless v. Greenless, 62 Ala. 330), or by the court ex mero motu (Gayle v. Pennington, supra; Lady Ensley Co. v. Gordon, 155 Ala. 528, 46 South. 983; Espy v. Comer, 76 Ala. 501; James v. James, 55 Ala. 525).

The doctrine of repose, the basis of the rule of laches (and of prescription), is applied or denied on the natural justice or the circumstances of each case that may or may not effect the right of procedure in equity. It is not primarily a question of possession, but of acquiescence in the assertion of adverse rights and unreasonable delay on the part of the real owner in asserting his right to the prejudice of his adversary in interest. Haney v. Legg, supra; Butt v. McAlpine, 167 Ala. 521, 52 South. 420; Union, etc., Co. v. Jackson, 188 Ala. 599, 604, 65 South. 986. Where the equity of the case demands, after a lapse of time, acquiescence will be presumed; yet acquiescence involves knowledge of the facts which entitle him to relief, and to manifest thereafter a want of diligence which will not be rewarded to the prejudice of an adverse party in interest. First National Bank v. McIntosh, 201 Ala. 649, 79 South. 121, L. R. A. 1918F, 353; James v. James, supra; Union Co. v. Jackson, supra; South v. Pinion, supra. Vigilantibus et non dormientibus jura subveniunt; the laws aid those who are vigilant, not those who sleep upon their rights. Pom. Eq. Jur. (3d Ed.) §§ 418, 419; Espy v. Comer, 76 Ala. 501; Rives v. Morris, 108 Ala. 527, 18 South. 743; Hauser v. Foley, 190 Ala. 437, 67 South. 252; De Graffenried v. Breitling, 192 Ala. 254, 258, 68 South. 265; Veitch v. Woodward Iron Co., supra; Sims v. Riggins, 201 Ala. 99, 103, 77 South. 393; Weil v. Centerfeit, 201 Ala. 531, 78 South. 885; Scott v. Scott, 202 Ala. 244, 80 South. 82; Corley v. Vizard, 203 Ala. 564, 570, 84 South. 299. Yet, under the facts and peculiar circumstances of delay in the enforcement of his rights averred by complainant, no statute of limitation or application of the rule of laches prevents the enforcement of the rights specifically set up in the bill.

The decree overruling the demurrers to the bill is without error. It is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.