27 So.2d 206

### BLEWETT et al. v. STALLWORTH.

I Div. 247.

Supreme Court of Alabama.

Aug. 2, 1946.

Gaillard & Gaillard and Wm. G. Caffey, all of Mobile, for appellants.

Smith, Hand & Arendall, of Mobile, for respondent Hill.

Vickers, Leigh & Thornton, of Mobile, for appellees.

FOSTER, Justice.

The contention made on this appeal is laches sufficient to deny relief to complainant in a statutory suit in personam to quiet the title to land as between the parties in the cause. Section 1109, Title 7, Code. The court denied the claim of laches and granted relief, and in doing so we think there was no error.

The complainant for a recited consideration of $1,000 acquired the land by statutory warranty deed from the heirs of William C. Thompson who had been a resident of Chicago until his death. The deed was dated December 29, 1944. The respondents claim under a quitclaim deed reciting a consideration of $50 from Wil-

liam C. Thompson of New York, dated June 13, 1944, to Dr. Means Blewett and W. M. Wright. Blewett and Wright by instrument dated July 6, 1944, made a lease to George P. Hill for oil, gas and other minerals, for a consideration of $5080 paid them. And by deed dated July 20, 1944, Blewett and Wright conveyed to George P. Hill a fourth interest in the minerals under said property for $1,016 paid them. George P. Hill was granted relief against Blewett and Wright on a cross-bill to the extent of the sums so paid. No contention is here made that there was error in so doing, if complainant is entitled to relief such as was granted by the trial court. Another deed to Audrey R. Malone was made by Blewett and Wright for a consideration of $1,000 conveying a fourth interest in the minerals in and under said land, dated September 29, 1944, as to which no separate question is involved on this appeal.

The factual issue was whether the Chicago William C. Thompson or the New York William C. Thompson was the grantee in a deed to the land conveying it to William C. Thompson, executed by Farmers Loan and Trust Company of New York (as trustee under a deed of trust from the Mobile and Ohio Railroad Company) acting by Peoples Bank of Mobile and Jack F. Ross, as attorneys in fact. The deed was dated May 18, 1923. Previously there was a contract of sale to him dated January 18, 1914. The deed was not recorded until January 9, 1945. The public became interested in the land on account of an oil activity in lands in that section.

The Chicago Thompson's wife was named Marjory. The New York Thompson's wife was named Ada. The timber on the land had been cut over, and no one had been in actual possession since then, and no tax assessment had been made for over twenty years. There is vague reference to a timber lease to one Skinner, who has been dead for many years.

The first activity in respect to the land was that Blewett and Wright sought to purchase it and inquired at the railroad office and found that their records show that it had been sold to William C. Thompson. They remember a William C. Thompson who at one time lived at Citronelle, and whose wife Ada was reared and lived there. They found out from Mrs. Thompson's sister at Citronelle where the Thompsons lived in New York state, and forwarded a quitclaim deed in a letter to them offering $50 for this land. They executed the deed and collected the $50. At the trial Mrs. Ada Thompson testified that she knew her husband bought some lands around Citronelle, but did not know their description: that her husband was at this time in a mental institution at El Paso, Texas. She knew nothing of the deed that her husband received, nor from whom received, nor what he paid; and she does not have the deed to this land in her possession, and does not know where it is.

It does not appear that the grantees from Blewett and Wright have expended any money in developing the land in reliance on their title and claim, nor that Blewett and Wright have done so.

The complainant, Stallworth, testified that he purchased the land from the heirs of Chicago Thompson by deed dated December 29, 1944, and went into possession at once by having it surveyed and posted using one hundred and fifty signs on it. He bought it from Mrs. Marjory Thompson and the only child of the Chicago Thompson. He located the contract of purchase by William C. Thompson from the Alabama Land and Development Company, acting under authority from the railroad company and Farmers Loan and Trust Company, dated January 18, 1914, and which is in evidence, and there found his address to be 4522 Greenwood Avenue, Chicago, and he then employed an attorney in Chicago to locate him. This resulted in the purchase by him from his heirs, as stated. Mrs. Marjory Thompson (widow), and Marjory Thompson Harris (daughter) both testified that Mr. Thompson was in Citronelle in 1922 or 1923, and he purchased some land near there, but do not remember details; that they found the original deed in a cash box in a storeroom in their home in Chicago. The deed dated May 18, 1923, conveying the land to William C. Thompson for a recited consideration of $1,016 paid was introduced, and is one the witness identified. There

was attached to it a paid check for $209 payable to Alabama Land and Development Company on the Kenwood National Bank of Chicago, cleared through the Chicago Clearing House. The signatures to the check and to the deed were proven.

The fact that complainant purchased from the true owner of the land is made very clear and no serious contention is now otherwise made. But appellants claim that they acted in good faith in buying from the New York Thompsons, and that the Chicago Thompsons were guilty of laches so as to require the court to deny relief to complainant against these appellants. These appellants were out $50 for a quitclaim deed. They received from George P. Hill over $6,000, and from Malone $1,000. No expense has been made in developing or improving the property. If relief is granted, the loss to appellants will be the $50 since they are required in the decree to restore to Hill the money he paid them. There is no bill by Malone, and he made no answer.

The question is, should equity deny relief to complainant in the interest of appellants on the facts which we have recited on account of laches on the part of the Chicago Thompsons in the assertion of their legal title, in respect to the New York Thompsons not in possession, asserting no right or title, and their grantees by quitclaim deed, who have no better right and who have never had possession of the land to this good day? The claim of laches is the chief contention asserted in argument. That was claimed in the answer.

█ Unless there is the assertion of a claim by the adverse party for the time required to deprive complainant of his rights, there is no field of operation for the principle of laches. "Staleness or laches is founded upon acquiescence in the assertion of adverse rights, and unreasonable delay on complainant's part in not asserting her own to the prejudice of the adverse party." Haney v. Legg, 129 Ala. 619, 30 So. 34, 36, 87 Am.St.Rep. 81; Treadwell v. Torbert, 122 Ala. 297, 300, 25 So. 216; Veitch v. Woodward Iron Co.,

200 Ala. 358, 76 So. 124; 30 Corpus Juris Secundum, Equity § 117, page 539.

"Acquiescence involves knowledge either actual or imputable of the assertion of an adverse right. If there is no assertion of the adverse right there can, of course, be no acquiescence." Haney v. Legg, 129 Ala. 619, 30 So. 34, 87 Am.St.Rep. 81; Veitch v. Woodward Iron Co., supra (200 Ala. 358 at page 363, 76 So. 124); Butt v. McAlpine, 167 Ala. 521, 530, 52 So. 420.

█ The Chicago Thompsons have had the legal title to the land all the time since they received a deed to it in 1923. Since no one else has had actual possession their title has drawn to them a constructive possession of it throughout the years. Montgomery v. Spears, 218 Ala. 160, 117 So. 753; Bonham v. Loeb, 107 Ala. 604, 18 So. 300; Wood Lumber Co. v. Williams, 157 Ala. 73, 47 So. 202; Buckelew v. Yawkey, Ala.Sup., 24 So.2d 133.[1] They owed no one except subsequent purchasers or mortgagees under their grantor or his judgment creditors the duty to record their deed. Tutwiler v. Montgomery, 73 Ala. 263; section 120, Title 47, Code. They owed no one but the state and county the duty to assess and pay the taxes. Their constructive possession has been peaceable throughout the twenty-one years. They were under no duty to others than those claiming under their grantor to make any particular assertion of their right or title, not now considering one making permanent improvements under a bona fide claim of ownership. Others going upon the land would be trespassers, and have no claim which the Chicago Thompsons were required to respect until they made an open assertion of it. So that the principle of laches does not bar complainants in respect to such persons. City of Bessemer v. Ratliff, 240 Ala. 406(4), 408, 199 So. 838; Behan v. Friedman, 218 Ala. 513, 119 So. 20; City of Bessemer v. Schanz, 226 Ala. 573, 148 So. 131; Branford v. Shirley, 238 Ala. 632, 193 So. 165; 30 Corpus Juris Secundum, Equity §§ 116(c), 117, pages 538, 539.

█ In this case there was no assertion of an adverse claim until appellants ob-

[1] 247 Ala. 304.

tained a deed from the New York Thompsons who owned no interest in it and had asserted no claim to it prior to their deed to appellants. This was in June, 1944. The Chicago Thompsons had owned the fee title since May 18, 1923, and during those twenty-one years had had the constructive possession of it. His heirs sold it to complainant December 29, 1944, who went into the immediate actual possession. Up to that time there had not been any one in actual possession. His knowledge that appellants had bought from the New York Thompsons does not reflect upon his title nor is there any acquiescence on the part of complainant in any such claim by appellants who never took possession. This bill was filed by complainant March 20, 1945, less than three months after he bought it, and nine months after appellants obtained their quitclaim deed.

This is no occasion for the operation of laches nor is there an inequitable situation disclosed sufficient to deprive complainant of the remedy here sought.

There is no reason shown for a reversal of the decree. It is affirmed.

Affirmed.

All the Justices concur.